

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BALDWIN GRAPHIC SYSTEMS, INC., )
)
        Plaintiff, )
)
vs. ) No. 03 C 7713
)
SIEBERT, INC., )
)
        Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Baldwin Graphic Systems, Inc. (Baldwin) brought this suit against Siebert, Inc. (Siebert) alleging infringement of three patents for technology devoted to cleaning printing press components. Siebert has moved for summary judgment. Though Baldwin's complaint contains three counts, each based on a different patent, only two patents are relevant to Siebert's motion. Baldwin has not pursued count III for infringement of U.S. Patent No. 6,035,483 and in a proposed amended complaint drops all allegations concerning this patent. Siebert seeks summary judgment on Baldwin's other two counts involving Reissue U.S. Patent No. 35,976 for a "Pre-Packaged, Pre-Soaked Cleaning System And Method For Making The Same" and U.S. Patent No. 5,974,976 for a "Cleaning System And Process For Making Same Employing Reduced Air Cleaning Fabric." We consider Siebert's motion as well as Baldwin's motion to amend the complaint by dropping count III and adding Siebert's chief executive and president, James Mulcahy, as a defendant.

## BACKGROUND

Baldwin, a Delaware corporation headquartered in Connecticut, manufactures and

sells printing press accessories, some of which are used to clean press components. Inventors, Charles Gasparrini and Walter Cano, developed innovations in the cleaning of printing presses for which they attained several patents that they then assigned to Baldwin. On November 29, 1994, Baldwin received U.S. Patent No. 5,368,157 ('157 patent) for an invention entitled "Pre-Packaged, Pre-Soaked Cleaning System And Method For Making The Same." The patent abstract described the invention as a roll of fabric soaked in a low volatility organic compound solvent that is placed in a heat-sealed plastic sleeve for shipping and storage. The roll can be attached to a printing press so that the solvent-soaked fabric contacts and cleans soiled press cylinders.

On April 10, 1995, less than five months after the patent issued, Gasparrini filed a Reissue Patent Application with the Patent and Trademark Office (PTO). He stated that errors in the original patent rendered it defective and that through an inadvertent mistake he and Cano had claimed less in the specification than that to which they had a right. The reissue application sought to amend language in the abstract and add a number of new claims. Though the patent examiner initially rejected Gasparrini's claims in the reissue application, after considerable correspondence recorded in the prosecution history, the patent was reissued with amendments as Reissue U.S. Patent No. 35,976 (reissue patent).

In November 1999, Baldwin acquired another patent that improved on the pre-packaged, pre-soaked cleaning system. Due to air pockets in the fabric of the pre-soaked roll, the solvent would shift, depending on how the roll was stored, creating an uneven distribution of solvent. Gasparrini and Cano solved this problem by reducing the amount of air in the fabric and thus curtailing the movement of solvent. On November 2, 1999, the PTO issued U.S. Patent No. 5,974,976 ('976 patent) for Gasparrini and Cano's invention, entitled

"Cleaning System And Process For Making Same Employing Reduced Air Cleaning Fabric." The description of the preferred embodiment of the invention explained that "[t]he preferred, but not exclusive, method of reducing the air content in the fabric is calendaring [sic]," a process in which the fabric is compressed by a pair of rollers.

Siebert, an Illinois corporation, owns a patent on a solvent that is also used in the cleaning of printing press components. In 2001, Siebert asked its attorney to assess whether the sale of fabric rolls soaked in its solvent would infringe certain patents assigned to Baldwin. In his written opinion, counsel concluded that Siebert's sale of pre-soaked rolls in drums or unsealed containers in quantities of three or more would not infringe Baldwin's reissue or '976 patents. In July 2002, Siebert began manufacturing and selling pre-soaked fabric rolls. None of Siebert's rolls was individually wrapped. Siebert sold the rolls in sets of three packaged in a zip-locked bag or in quantities of six to nine in a plastic bag that was not shut, but folded over. Sometime thereafter, Siebert stopped selling its set of three rolls in zip-locked bags, opting to package them in the same style as its larger quantity sales – in a folded-over plastic bag. Baldwin alleges that Siebert's sale of the pre-soaked rolls infringes independent claims 1 and 14 of the '976 patent, as well as dependent claims 7, 9 and 25. It further alleges defendant induced infringement of claim 23 and contributorily infringed claim 12. As to the reissue patent, Baldwin alleges contributory infringement of claim 32 for those rolls sold in zip-locked bags.

## DISCUSSION

Our function in ruling on a motion for summary judgment is to determine if there is a genuine issue of material fact for trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986). If the evidence on file shows that no such issue exists, and the moving party is entitled

to judgment as a matter of law, we will grant the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Bennett v. Roberts, 295 F.3d 687, 694 (7th Cir. 2002). A "metaphysical doubt as to the material facts" is not enough to create a genuine issue of fact for trial, Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585 (1986); the evidence must allow for a reasonable trier of fact to find for the non-movant. Buscaglia v. United States, 25 F.3d 530, 534 (7th Cir. 1994). When reviewing a motion for summary judgment we draw all inferences in the light most favorable to the non-movant. DeValk Lincoln Mercury, Inc. v. Ford Motor Co., 811 F.2d 326, 329 (7th Cir. 1987). In a patent infringement action a defendant seeking summary judgment may satisfy its burden of production by "providing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case." Novartis Corp. v. Ben Venue Laboratories, Inc., 271 F.3d 1043, 1046 (Fed. Cir. 2001); Vivid Technologies, Inc. v. American Science & Engineering, Inc., 200 F.3d 795, 806 (Fed. Cir. 1999).

An infringement analysis is a two-step process requiring the court to construe the scope and meaning of the relevant patent claims and then compare the properly construed claims to the allegedly infringing device. CCS Fitness, Inc. v. Brunswick Corp., 288 F.3d 1359, 1365 (Fed. Cir. 2002). Patent claims "define the invention to which the patentee is entitled the right to exclude." Innova/Pure Water, Inc. v. Safari Water Filtration Sys. Inc., 381 F.3d 1111, 1116 (Fed. Cir. 2004). To prove infringement the patentee must establish that the defendant's device meets each element of a patent claim, either literally or under the doctrine of equivalents. Dynacore Holdings Corp. v. U.S. Philips Corp., 363 F.3d 1263 (Fed. Cir. 2004). If the accused device does not meet every claim element, or its substantial equivalent, then there is no infringement. Warner-Jenkins Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 40

(1997).

Claim construction is a matter of law, leaving the court with "the power and obligation" to construe the language of the patent claims. Markman v. Westview Instruments, Inc., 52 F.3d 967, 979 (Fed. Cir. 1995). Because we have held a Markman hearing, our analysis of the summary judgment motion will be in light of claim constructions we have determined, explaining why we have so determined as we go. Claim construction analysis begins with the language of the claims. Hockerson-Halberstadt, Inc. v. Avia Group International, Inc., 222 F.3d 951, 955 (Fed. Cir. 2000). Courts apply a heavy presumption that claim language means what it says. Texas Digital Systems, Inc. v. Telegenix, Inc., 308 F.3d 1193 (Fed. Cir. 2002). Thus, "unless compelled otherwise, a court will give a claim term the full range of its ordinary meaning as understood by persons skilled in the relevant art." *Id.* Nonetheless, to determine the ordinary meaning of a term, courts look outside the claim to the patent's written description, drawings, the prosecution history and dictionaries and treatises, all of which provide a context that illuminates the claim term's meaning. Gemstar-TV Guide International, Inc. v. International Trade Commission, 383 F.3d 1352, 1364 (Fed. Cir. 2004); Abtox v. Exitron Corp., 122 F.3d 1019, 1023 (Fed. Cir. 1997). As the Federal Circuit made clear recently in Phillips v. AWH Corp., ___ F.3d ___, 2005 WL 1620331 (Fed. Cir. 2005), when courts construe claims, intrinsic evidence, especially the specification, takes priority over extrinsic sources, such as dictionaries. "The presumption of ordinary meaning will be 'rebutted if the inventor has disavowed or disclaimed scope of coverage, by using words or expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope.'" *Id.* (quoting ACTV Inc. v. Walt Disney Co., 346 F.3d 1082, 1091 (Fed. Cir. 2003).

First, we look to the reissue patent. Plaintiff alleges that defendant infringed claim 32

of this patent, which defines the invention as:

> A pre-packaged, pre-soaked cleaning system for use to clean the cylinder of printing machines comprising in combination:
> (1) a pre-soaked fabric roll saturated to equilibrium with cleaning solvent disposed around a core, said fabric roll having a sealed sleeve which can be opened or removed from said fabric roll for use of said fabric roll, disposed therearound, and said system including
> (2) means for locating said fabric roll adjacent to and operatively associated with a cylinder to be cleaned.

Defendant argues that its product does not meet two elements in this claim: "a pre-soaked fabric roll" and a "sealed sleeve." Defendant construes "a pre-soaked fabric roll" to be a single fabric roll, and "sealed sleeve" to mean a heat-sealed sleeve. Plaintiff contends that "a pre-soaked fabric roll" in the context of this claim means one or more fabric rolls, and that "sealed sleeve" is not limited to heat-sealed sleeves.

The question of whether claim 32 applies to a cleaning system that has more than one fabric roll is not simply answered by the singular article "a," modifying "pre-soaked fabric roll." As defendant recognizes, "a" can mean "one or more" when in a claim with the transitional phrase "comprising." *See* <u>Scanner Technologies Corp. v. Icos Vision Systems Corp., N.V.</u>, 365 F.3d 1299, 1304 (Fed. Cir. 2004); <u>KCJ Corp. v. Kinetic Concepts, Inc.</u>, 223 F.3d 1351, 1356 (Fed. Cir. 2000). Unless the patentee "evinces a clear intent" to limit the article "a" to a singular interpretation, it is properly construed as one or more. <u>KCJ Corp.</u>, 223 F.3d at 1356. To determine if there is clear intent to limit "a" to one, the court looks to claim language and context, and to the patent specification and prosecution. *Id.*; <u>Scanner Technologies</u>, 365 F.3d at 1304-05; *see* <u>Phillips</u>, 2005 WL 1620331 at *9 ("It is therefore entirely appropriate for a court, when conducting claim construction, to rely heavily on the written description for guidance as to the meaning of the claim.").

Defendant contends that the claim's repeated reference to "said fabric roll" indicates that the patentee contemplated only one roll. In Abtox, the Federal Circuit addressed the significance of the word "said," while analyzing whether the phrase "a metallic gas-confining chamber" limited the claim to relevant devices with a single chamber. The court found that the claim's repeated reference to "said chamber," instead of "a chamber," reinforced "the singular nature of the chamber." Abtox, 122 F.3d at 1024. Similar to the patent in Abtox, claim 32 of the reissue patent repeatedly employs the term "said fabric roll" to refer back to the antecedent, "a pre-soaked fabric roll."

Plaintiff cites the Manual of Patent Examining Procedure (MPEP) to support the contention that "said" does not *per se* connote "single," but rather is an accepted term used to refer back to a previously cited object. While we agree that "said" does not *per se* connote single, plaintiff's citation to MPEP § 2173.05(e) only strengthens defendant's contention that the use of "said" in claim 32 evidences a limitation to a single fabric roll. Section 2173.05(e) discusses the confusion that can arise when a claim lacks a proper antecedent basis for a term. For example, a claim is unclear if it mentions "the lever," without first identifying an element of the claim to which this could refer, or references "said aluminum lever," even though the only prior reference to a similar element was the less specific, "a lever." *Id.* The section also explains, "if two different levers are recited earlier in the claim, the recitation of 'said lever' in the same or subsequent claim would be unclear where it is uncertain which of the two levers was intended." *Id.* Therefore, the use of "said fabric roll" implies that the prior reference to "a fabric roll" should be read as a single roll, not one or more rolls, in order to avoid confusion. As the Abtox court found, use of the word "said" evidences an intention that the modified term be singular. 122 F.3d at 1024.

The Federal Circuit faced the same issue in <u>Insituform Technologies, Inc. v. Cat Contracting, Inc.</u>, 99 F.3d 1098, 1105 (Fed. Cir. 1996), as well. In that case the patent concerned a method of repairing underground pipes in which a vacuum drew heat-setting resin through a tube inserted in the pipe. The court considered whether the claim's reference to "a [vacuum] cup" and " the cup" limited the claim to a repair method that involved only one vacuum cup. *Id.* at 1105. It found that the claim's repeated reference to "the cup," as well as to a singular region of vacuum application, was inconsistent with a construction of the claim that covered methods involving more than one vacuum cup. *Id.* In <u>Scanner Technologies</u>, in which the court construed "an illumination apparatus" to mean one or more apparatuses, the Federal Circuit distinguished the outcome in <u>Insituform Technologies</u>, by emphasizing the claim's reference to "the cup." 365 F.3d at 1304. Like with "the cup," "said fabric roll" emphasizes the singularity of the term.

The <u>Scanner Technologies</u> opinion highlighted other reasons why the <u>Insituform</u> court properly limited the claim to a single cup, including that "neither the specification nor the drawings disclose[d] the use of more than one cup." <u>Scanner Technologies</u>, 365 F.3d at 1304. Similar circumstances compel us to construe "a pre-soaked fabric roll" to mean a single fabric roll. Not only does the specification not disclose a system involving more than one fabric roll, it indicates only one roll was intended. The patent specification states that the sleeve is "disposed around and in intimate contact with the fabric roll," which would not be fully possible with more than one roll in the sleeve. While plaintiff is correct that courts do not import limitations from the specification into a claim, *see* <u>Comark Communications, Inc. v. Harris Corp.</u>, 156 F.3d 1182, 1186 (Fed. Cir. 1998), the Federal Circuit regularly turns to the specification for context when weighing whether the patentee evinced an intent to limit the

meaning of the article "a." *See* Scanner Technologies, 365 F.3d at 1305; KCJ Corp., 223 F.3d at 1357; Abtox, 122 F.3d at 1024; Insituform, 99 F.3d at 1106. As with the patent specifications in Abtox and Insituform, the reissue patent specification repeatedly modifies the relevant claim term, in this case fabric roll, with "the." Furthermore, Figures 1, 2 and 3 of the reissue patent all depict a single roll, just as the figure in Abtox depicted a single chamber and the figures in Insituform depicted a single vacuum cup. Abtox, 122 F.3d at 1024; Insituform, 99 F.3d at 1106. Thus, we construe the term "a pre-soaked fabric roll" in claim 32 of the reissue patent to mean a single pre-soaked fabric roll. Given that defendant never sold single pre-soaked fabric rolls, but only rolls in sets of three or in quantities between six and nine, it has not infringed the reissue patent.

Even if "a pre-soaked fabric roll" is properly construed to mean one or more fabric rolls, summary judgment for non-infringement of this claim would still be appropriate because the term "sealed sleeve" in claim 32 is properly limited to heat-sealed sleeves and it is an undisputed fact that defendant never sold pre-soaked fabric rolls in heat-sealed sleeves. As discussed above, there is a heavy presumption that a term means what it says, and thus, when a court construes a claim, it should give the disputed term the full range of its ordinary meaning, as understood by persons skilled in the relevant art. Of course, even a heavy presumption can be overcome. Though the plain meaning of the term "sealed" is much broader than "heat-sealed," intrinsic evidence reveals that the patentee disavowed the broader meaning of the term.

All references in the reissue patent specification to a sealed sleeve are to a "heat-sealed" or a "heat-shrunken and heat-sealed" sleeve, as are all references in the 28 claims that appeared in the original '157 patent. Given that limitations from the patent specification or

other claims are not imported to apply to terms in separate claims, this alone would not justify construing "sealed sleeve" in claim 32 to mean "heat-sealed sleeve." However, a review of the prosecution history for the reissue patent makes clear that in this context a person skilled in the art would understand this term to carry the narrower meaning.

In Gasparrini and Cano's application for the reissue patent, they sought, among other things, to replace the terms "heat-sealed" and "heat-sealable," which modified "sleeve" in the specification and abstract, to "sealed" and "sealable." The patent examiner rejected the changes requested in the reissue application. He explained that "the changes sought to be made to the disclosure constitute new matter, because they add to the invention originally disclosed, as opposed to merely broadening the scope of the claims." (Reissue Patent Prosecution, PTO Official Action 12/5/1995 at 4). To illustrate his point, he used the requested change from "heat-sealed" to "sealed":

> [T]he amendments to the specification in the reissue application now indicate that the invention encompasses other means of sealing the sleeve, when in the original disclosure, the sleeve was described as being a heat sealed or a heat-shrunken and heat sealed sleeve, whenever the method of sealing was referred to. The applicant has not shown where in the original disclosure, other than a heat-sealed or a heat-shrunken and heat sealed sleeve was contemplated, and if so, what those other kinds of sealing and/or sleeve might be.

*Id.* In their response to the PTO's rejection of the substitution of terms, the patentees contended that the revisions do not introduce new matter, "but merely explain in more detailed language subject matter which is already disclosed therein." (Reissue Patent Prosecution, Amendment 3/6/1996 at 9). They argued that since the '157 patent specification included more specific aspects of the patented method, such as using a vacuum to draw the heat-sealable plastic sleeve into intimate contact with the fabric roll, the specification "clearly teaches that broadly the sleeve could be a sleeve which need not be plastic and/or which is not

heat sealable by actually requiring application of heat from an external source." *Id.* at 10.

Once again the patent examiner rejected the proposed changes. He soundly dismissed the patentees' contention that the more specific aspect of the method involving the use of a vacuum with the heat-sealable plastic sleeve taught that the sleeve did not need to be plastic nor heat-sealable. He writes, "It is inconceivable that the applicants can find such a teaching in the above quoted language of the original specification, which by its own terms refers to the sleeve as a heat sealable plastic sleeve. Why would one of ordinary skill in the art upon being informed that a sleeve was a heat sealable plastic sleeve, infer that what was really intended was that the sleeve need not be plastic and/or need not be heat sealable?" (Reissue Patent Prosecution, PTO Official Action 5/16/1996 at 5).

After this final rejection by the PTO, the patentees withdrew their proposed amendments substituting "heat-sealed" and "heat-sealable" for the broad term "sealed." In their Amendment After Final Rejection, filed September 18, 1997, the patentees still sought various changes concerning issues unrelated to the heat-sealed sleeve, as well as the approval of new claims 44, 45, 46, and 57 (which when accepted was renumbered as claim 32). Arguing for the acceptance of these changes, the patentees stated, "Moreover, with the cancellation of the material submitted in the Preliminary Amendment of April 10, 1995, also renders moot the objection to the Specification on grounds of new matter, under 35 U.S.C., Section 132, with the cancellation of such Amendment." In other words, the patentees argue that the patent examiner's objection on the grounds of new matter concerning the term "sealed sleeve" is no longer valid because their revised amendments do not seek to broaden the term "heat-sealed sleeve" to "sealed sleeve." Under such circumstances, the term "sealed sleeve" in the proposed claims can only be read as the more limited term, "heat-sealed sleeve." A broader reading

would be wholly incongruous with the patent prosecution, the patent examiner's blunt rejection of the contention that the patent specification supports the broader term, and the patentees' own acknowledgment that their revised amendments no longer sought to broaden this terminology.

Plaintiff argues that, to the contrary, the patent examiner has established that the specification supports the claim term "sealed sleeve." Plaintiff contends that despite the patent examiner's initial objections to the claims on the basis of new matter, he ultimately concluded that the broader term was supported in the specification, as evidenced by the withdrawal of his objection and the approval of four claims that contained the term "sealed sleeve" in the reissue patent. Plaintiff quotes the examiner's Official Action dated June 20, 1997, as evidence that he did not intend for this term to be narrowly defined: "In view of the latest amendments to the specification and the applicant's arguments, the previous rejections and objections on grounds of New Matter are hereby withdrawn or have been rendered moot." However, the examiner opened that same Official Action by stating it was intended to respond to the current requested changes, and that "it would appear that the only remaining substantial changes to the original specification (the patent specification) are those having to do with the thickness of the fabric roll and with the specific types of organic compound solvent which may be employed in carrying out the practice of the invention." Thus, the examiner was not addressing the term "sealed sleeve." This official action provides no indication that the examiner re-evaluated his prior objections concerning the term "sealed sleeve," nor his opinion that it is inconceivable that the specification teaches that the sleeve need not be plastic and/or need not be heat-sealable. As he points out, his objections were merely rendered moot because the patentees made such significant changes in the amendments they were seeking, including

dropping all requests that the terms "heat-sealed" and "heat-sealable" in the '157 patent be replaced by "sealed" or "sealable" in the reissue patent. Based on this patent history, "sealed sleeve" in claim 32 must be construed to mean "heat-sealed sleeve."

Now, we turn to the '976 patent. Plaintiff alleges that defendant infringed claims 1, 7, 9, 14 and 25, induced the infringement of claim 23, and contributorily infringed claim 12. Defendant once again argues that it is entitled to summary judgment because its product does not meet an element present in each claim. Claims 1 and 14 are independent claims on which claims 7, 9, 12, 23 and 25 depend. Therefore, if plaintiff is entitled to summary judgment of non-infringement on claims 1 and 14, it is also entitled to summary judgment on the dependent claims. <u>Wahpeton Canvas Co. v. Frontier, Inc.</u>, 870 F.2d 1546, 1552, n. 9 (Fed. Cir. 1989)("One who does not infringe an independent claim cannot infringe a claim dependent on (and thus containing all the limitations of) that claim."). Claim 1 of the patent defines the invention as:

> A device for cleaning a cylinder of a printing press comprising:
> a reduced air content cleaning fabric having an air content by volume of 1 to 50 percent; and
> a solvent comprising a low volatility cleaning compound which does not readily evaporate at ambient temperatures, and means for introducing said solvent being into said reduced air content cleaning fabric in an amount sufficient for cleaning said cylinder of a printing press.

Claim 14 reads:

> A method for making a cleaning system comprising:
> reducing air content of a strip of cleaning fabric by 1 to 50 percent to form a strip of reduced air cleaning fabric; and
> contacting said strip of reduced air content cleaning fabric with a low volatility, organic compound solvent which does not evaporate readily at ambient temperature and pressure and pre-soaking and saturating said reduced

air content cleaning fabric with said solvent.

Defendant contends that its product does not employ the claim element: a "reduced air content cleaning fabric." The parties dispute the proper construction of this term. Though claim 14 contains slightly different language – "reducing air content of a strip of cleaning fabric" – plaintiff and defendant agree that the term from claims 1 and 14 are substantially similar. Thus, we address both claims by construing "reduced air content cleaning fabric." Defendant construes this term to mean a fabric that has undergone calendering or some other process that reduces the fabric's air content, but not fabric that simply has been wound on a roll. Plaintiff construes the term to mean fabric in which the air content has been reduced by mechanical means, including by winding on a roll with sufficient tension.[1]

Obviously, defendant does not find its proposed limitation on the meaning of "reduced air content cleaning fabric" in the claim language. Neither claim 1 nor claim 14 discusses methods for reducing the air content in the fabric. Defendant argues that the specification, the prosecution history, and plaintiff's original litigation theory, establish that reduced air content fabric cannot be construed to include fabric that has merely been wound on a roll. First, defendant points to the patent specification, which mentions only calendering as a method of reducing the air content of fabric. Defendant also argues that the patentees' failure to present the winding of fabric on a roll as a method for reducing its air content evidences that they did not intend for the disputed term to apply to fabric that had only undergone this process.

---

[1] Plaintiff refers to this process as rewinding, while defendant speaks only of winding fabric on a roll. Plaintiff's terminology acknowledges that the fabric rolled onto cores for use in the cleaning of printing presses is taken from large source rolls onto which the fabric has already been rolled. We use the term "winding," though it should be read as synonymous with plaintiff's "rewinding."

While defendant relied on specification language to illuminate the disputed claim in the reissue patent, here it attempts to rely on the absence of language to support its claim construction. However, as plaintiff correctly highlights, it is an error of law to limit a patent claim to preferred embodiments in the specification. Phillips, 2005 WL 1620331 at 15-16. Ekchian v. Home Depot, Inc., 104 F.3d 1299, 1303 (Fed. Cir. 1997). The patentees' failure to mention winding, or any other air content reduction method, does not preclude fabric whose air content has been reduced by those methods from falling under the definition of a "reduced air content fabric." Furthermore, the patent specification is clear that calendering is not the only method of creating reduced air content fabric. It states, "The preferred, *but not exclusive*, method of reducing the air content in the fabric is calendering." (emphasis added). This language provides no basis on which to exclude some methods of air content reduction.

Defendant argues that the prosecution history of the '976 patent evidences the limitation on the disputed term. It contends that the patentees conceded during the application process that "reduced air content fabric" does not contemplate fabric wound on a roll in order to attain the '976 patent over their earlier '157 patent. Now, defendant claims, plaintiff is attempting to broaden the term despite the patentees' explicit limitation. The crux of defendant's argument rests on the patentees' statement to the examiner that "[b]ecause [the '157 patent] is not directed to a reduced air content cleaning fabric, Applicants respectfully submit that the claimed invention is novel over the art cited." ('976 Patent Prosecution, Response 6/26/1996 at 9). Defendant asserts that since the '157 patent claimed a cleaning system in which fabric was wound on a roll, and the patentees stated that the patent was not directed to a reduced air content cleaning fabric, then fabric that has only been wound on a roll does not fall under the definition of "reduced air content fabric."

The patentees' statement in the prosecution history does not serve as a manifest exclusion or clear disavowal modifying the plain language of the unqualified claim term "reduced air content fabric." A plain reading of the statement reveals only the uncontroversial assertion that the '157 patent does not claim, disclose, or teach a cleaning system involving reduced air content fabric. The fact that the '157 patent involves fabric wound on a roll does not preclude the '976 patent from claiming fabric that has reduced air content due to a method of winding it on a roll. Claims 1 and 14 of the '976 patent do not limit the methods for producing reduced air content fabric, and nothing in the '157 patent, nor in the patentees' arguments during the patent prosecution, mandates a limitation on the term.

Finally, plaintiff's initial mistaken belief that defendant's product infringed the '976 patent because it used calendered fabric, has no bearing on claim construction. Plaintiff's theories of infringement do not alter the plain meaning of the term, nor evidence the patentees' intent to limit it. Plaintiff's pre-suit investigation obviously led it to focus on defendant's alleged calendering of fabric, but this focus does not dictate the scope of the claim term. Even if plaintiff filed suit unaware that methods of winding fabric could create a reduced air fabric it would not affect the construction of the term. Claim terms do not expand nor contract, based on the plaintiff's litigation strategy. The term "reduced air content cleaning fabric" does not exclude fabric whose air content has been reduced by a method of winding or rewinding the fabric on a roll. Given this construction of "reduced air content cleaning fabric," defendant is not entitled to summary judgment for non-infringement of the '976 patent. A question of fact exists as to whether defendant's pre-soaked cleaning rolls employed reduced air content cleaning fabric created by winding or rewinding the fabric. The claims do not cover any and all fabric wound on a roll, but only fabric wound in such a fashion as to

reduce air content. Whether or not defendant's rolls are so wound we leave to another day.

Defendant offers an additional argument concerning plaintiff's claim of contributory infringement of claim 12. To establish contributory infringement, a plaintiff must prove that the alleged product constitutes a material part of the patented device and does not have a substantial non-infringing use. 35 U.S.C. § 271(c). As discussed above, defendant has failed to establish that the term "reduced air content cleaning fabric" precludes its device from constituting a material part of the patented device. However, defendant argues that it is still entitled to summary judgment because its product has a substantial non-infringing use – cleaning paint, ink and other substances from surfaces other than printing press cylinders. Defendant bases this argument on the opinion of its expert that the pre-soaked fabric rolls can be used for such non-infringing applications. In his deposition, however, defendant's expert admits that only once has he seen someone use a roll for a non-infringing purpose, and that roll was damaged. This testimony does not establish a substantial non-infringing use for which defendant is entitled to summary judgement on plaintiff's contributory infringement claim. Thus, defendant's motion for summary judgement on plaintiff's claims of infringement, contributory infringement, and induced infringement of the '976 patent, is denied.

We turn now to plaintiff's motion for leave to file an amended complaint. Plaintiff seeks to make two significant changes to its original complaint, to delete count III for infringement of U.S. Patent No. 6,035,483 and to add another defendant, Siebert's chief executive and president, James Mulcahy. Though defendant did not consent to plaintiff's elimination of count III, and offers a brief argument against allowing this amendment, the real dispute does not center on this change. As plaintiff is not pursuing its claim of infringement of patent '483, it would be dismissed if not dropped from the action by amendment of the

complaint. The briefs reveal that the parties are focused on whether plaintiff should be allowed to add Mulcahy as a defendant. Under Federal Rule of Civil Procedure 15(a), the court shall freely grant leave to amend a complaint "when justice so requires." Adding a party to an action is governed by Rule 21, which similarly allows parties to be dropped or added "at any stage of the action and on such terms as are just." However, Rule 16, which governs pretrial scheduling and management, provides a different standard relevant to our analysis. Where an order has issued limiting the time to join additional parties and amend the pleadings, the "schedule shall not be modified except upon a showing of good cause and by leave of the district judge." In this case, the parties' schedule set December 31, 2003, as the last day on which to file motions to join other parties or amend the pleadings. Thus, plaintiff must have good cause to modify the schedule before we decide whether justice permits leave to amend the complaint a year after the scheduled deadline.

To determine whether there is good cause to alter the schedule, the court looks to whether the moving party exercised due diligence, despite its failure to satisfy the deadline. *See* Humphrey v. East Manufacturing Corp., 2003 WL 21361780 at *4 (N.D.Ill. 2003); Caliber One Indemnity Co. v. Millard Chicago Window Cleaning, LLC, 2005 WL 1206472 at *3 (N.D.Ill. 2005). Plaintiff argues that it exercised due diligence by filing its motion to amend soon after learning of its necessity. It contends that it filed the amended complaint only a month-and-a-half after learning that defendant did not have the ability to satisfy the estimated damages, which amounted to over $1,000,000 as of July 2004. Plaintiff states that it "came to the realization" that defendant would not be able to satisfy a judgment on December 20, 2004, and it filed the motion to amend on February 3, 2005.

We are uncertain why plaintiff measures its due diligence from December 20, 2004, the

date defendant's damages expert released a rebuttal report to plaintiff's expert's report. This implies that plaintiff's realization regarding its damages hinged on defendant's expert's assessment of its claims. On November 1, 2004, plaintiff's own expert released a report estimating the company's economic damages. Upon the release of this report plaintiff had an estimated figure for its damages and could see that defendant's assets would not come close to satisfying an award in plaintiff's favor. Thus, plaintiff should have realized no later than November 1, 2004, that defendant would not be able to cover a damages award.

Defendant argues that plaintiff knew or should have known even before November 1, 2004, that it would not be able to cover the damages sought. We agree. Plaintiff's original complaint asserts claims for the willful and deliberate infringement of three patents, for which it requests compensatory damages, exemplary damages equal to three times the compensatory damages, and reasonable attorneys' fees. Defendant asserts, and plaintiff does not contest, that in March 2004, it produced documents concerning its financial status. Plaintiff attached defendant's balance sheet as of December 31, 2003, to its motion to amend. The balance sheet reveals defendant's net equity to be $75,666.30. Yet, after receiving these documents revealing defendant's worth, plaintiff waited approximately ten months to file its motion to amend, adding Mulcahy. Plaintiff claims it had no reason to add Mulcahy to the complaint before receiving the reports of the damages experts. This is only true if plaintiff had a reason to believe, prior to receiving its own expert's report, that its damages were only worth about $75,000. Given that plaintiff's original complaint requested compensatory damages, exemplary damages, and attorneys' fees, and that plaintiff's expert determined compensatory damages alone to be over a million dollars, it would have been unreasonable for plaintiff to believe that defendant's net equity would be able to cover the damages sought. Thus,

plaintiff's due diligence in seeking to add Mulcahy is properly measured from the time it learned of defendant's net equity – March 2004. Plaintiff did not exercise diligence in filing its motion to add Mulcahy ten months later. Plaintiff's motion to file an amended complaint is granted in part and denied in part. It is granted as to the elimination of all claims related to the '483 patent and denied as to the addition of Mulcahy as a defendant.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment of non-infringement is granted as to the reissue patent, but is denied as to the '976 patent. Plaintiff's motion to amend is also granted in part and denied in part – it may eliminate all claims related to the '483 patent, but may not add Mulcahy as a defendant.

JAMES B. MORAN
Senior Judge, U. S. District Court

July 28, 2005.