IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BALDWIN GRAPHIC SYSTEMS, INC., )
)
        Plaintiff, )
)
vs. ) No. 03 C 7713
)
SIEBERT, INC., )
)
        Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Baldwin Graphic Systems, Inc., brought this action against Siebert, Inc., alleging infringement of three patents involving technology used to clean printing press components. Only one patent, U.S. Patent No. 5,974,976 ('976 patent), remains in dispute after plaintiff elected not to pursue claims relating to one patent, and after the court granted defendant summary judgment on non-infringement grounds for the other patent. *See* Baldwin Graphic Systems, Inc., v. Siebert, Inc., 2005 WL 1838451, 2005 U.S. Dist. LEXIS 15527 December 9, 2005 (N.D. Ill. 2005). Defendant now moves for reconsideration of the denial of summary judgment as to the '976 patent. Defendant also files two motions *in limine* to exclude the testimony and report of plaintiff's expert, John MacPhee. For the following reasons, defendant's motions are denied.

Motions to reconsider only serve to "correct manifest errors of law or fact or to present newly discovered evidence." Publishers Res. Inc. v. Walker-Davis Publications, Inc., 762 F.2d 557, 561 (7th Cir. 1985). We will only grant a motion to reconsider when the court has misunderstood a party; made a decision outside the adversarial issues presented by the parties; made an error of apprehension (not of reasoning); if a significant change in law has occurred;

or if a significant change in the facts has transpired. Bank of Waunakee v. Rochester Cheese Sales, Inc., 906 F.2d 1185, 1191 (7th Cir. 1990). Motions to reconsider are not vehicles for rehashing old arguments that have already been rejected. Oto v. Metropolitan Life Ins. Co., 224 F.3d 601, 606 (7th Cir. 2000). Nor should motions to reconsider be used to raise new arguments that could have been previously raised, in order to avoid waiver with respect to appeal. Caisse Nationale De Credit Agricole v. CBI Indus., Inc., 90 F.3d 1264, 1270 (7th Cir. 1996); Green v. Whiteco Indus., Inc., 17 F.3d 199, 201 n.4 (7th Cir. 1994). Defendant argues that reconsideration is appropriate because the court has purportedly made two errors of apprehension. According to defendant, the court misapprehended MacPhee's qualifications and his testimony, and the genuineness of the evidence relating to air content reduction in defendant's product.[1] Prior to addressing defendant's claim we first review the court's prior conclusions relating to the '976 patent.

Plaintiff alleges infringement of claims 1, 7, 9, 14 and 25, induced infringement of claim 23 and contributory infringement of claim 12. Claims 1 and 14 are independent claims, and the remainder are dependent. Defendant is thus entitled to summary judgment on all claims if it does not infringe claims 1 and 14. *See* Streamfeeder, L.L.C. v. Sure-Feed Sys., Inc., 175 F.3d 974, 985 (Fed. Cir. 1999) (stating that it is "an axiomatic principle that if an accused infringer does not infringe an independent claim, it cannot infringe claims that depend on that independent claim."). The centerpiece of the dispute is the meaning of the claim element

---

[1] Defendant also argues that the court's interpretation would render the claim terms indefinite under 35 U.S.C. § 112. We decline to consider this argument because it is a purported consequence of claim construction, not a misapprehension, and is not a ground for review on this motion to reconsider.

"reduced air content cleaning fabric."[2] In its summary judgment motion defendant argued that that term covered only fabric whose air content was reduced by calendaring, or a similar process. Plaintiff countered, and construed the term to mean fabric whose air content was reduced by mechanical means, which includes winding on a roll with sufficient tension. The combating constructions are significant because defendant's product employs winding fabric on a roll, and it accordingly sought summary judgment on non-infringement grounds.

We held that because neither independent claim specified a process or method for reducing air content in fabric, the term "reduced air content cleaning fabric" did not exclude fabric whose air content was reduced by winding or rewinding a roll. Baldwin, 2005 WL 1838451, *8-9. Defendant's construction improperly limited the meaning of the disputed claim term to preferred embodiments. Moreover, the specification did not support defendant's construction. Calendaring is described as the "preferred, but not exclusive, method of reducing air content in cleaning fabric." Further, defendant's reference to the prosecution history was unpersuasive because the patentees did not definitively exclude or disavow plaintiff's proposed construction of "reduced air content cleaning fabric." Defendant also claimed that plaintiff's original theory of infringement precluded its proposed construction. Plaintiff initially asserted that defendant calendared its fabric, an incorrect position. We noted

---

[2] Claim 1 reads:
A device for cleaning a cylinder of a printing press comprising:
a reduced air content cleaning fabric having an air content by volume of 1 to 50 percent; and a solvent comprising a low volatility cleaning compound which does not readily evaporate at ambient temperatures, and means for introducing said solvent being into said reduced air content cleaning fabric in an amount sufficient for cleaning said cylinder of a printing press.
Claim 14 reads:
A method for making a cleaning system comprising:
Reducing air content of a strip of cleaning fabric by 1 to 50 percent to form a strip of reduced air cleaning fabric; and contacting said strip of reduced air content cleaning fabric with a low volatility, organic compound solvent which does not evaporate readily at ambient temperature and pressure and pre-soaking and saturating said reduced air content cleaning fabric with said solvent.

that claim construction was independent of plaintiff's knowledge, and emphasized that the inquiry must focus on the claim language, which did not exclude the winding of fabric on a roll to reduce air content. In sum, there exist outstanding questions of fact as to whether defendant's cleaning rolls were wound in a manner that reduced air content.

Defendant's motion is in essence a challenge to the court's construction of the term "reduced air content cleaning fabric." In support of that attack, defendant contends that the court relied on MacPhee's report, which should not have been considered because it was extrinsic to the patent record and because MacPhee is not qualified as an expert. And without the report, defendant continues, there is no genuine issue of material fact to support the claim construction. The court's finding to the contrary amounts to the purported derivative misapprehension. In its motions *in limine*, defendant marshalls evidentiary and procedural arguments to disqualify MacPhee and exclude his report. Defendant contends that without MacPhee's testimony, summary judgment is proper.

We turn first to the role MacPhee's report served in the claim construction analysis. According to defendant, MacPhee's report was the sole basis for the court's conclusion that reduced air content cleaning fabric does not exclude cloth wound on a roll because that interpretation does not literally appear in the claim language. Defendant further posits that the court relied on MacPhee to the exclusion of intrinsic evidence. We disagree.

Defendant rests its argument on Phillips v. AWH Corp., 415 F.3d 1303 (Fed. Cir. 2005), a recent but not intervening decision that the court recognized in the summary judgment opinion and order (*see* Baldwin, 2005 WL 1838451, *3). Moreover, Phillips primarily reviewed and clairifed, rather than broke new ground regarding the Federal Circuit's views on extrinsic and intrinsic evidence. As plaintiff observes, the court never directly referenced

MacPhee's report. The inquiry focused on the claim language and not on extrinsic evidence. *See id.* at \*8 ("Neither claim 1 nor claim 14 discusses methods for reducing the air content in the fabric."). Indeed, because the claim language is silent as to the process employed to reduce air content, it is defendant's reading that offends claim construction tenets. Defendant interprets the claim's silence to actually state "not winding," but the only proper inference drawn from the silence is that the claim does *not* say "not winding." Further, interpreting the claim so that it means only reduced air content fabric achieved through calendaring is directly contrary to the plain language of the claim. *See* Omega Eng'g, Inc. v. Raytek Corp., 334 F.3d 1314, 1329 (Fed. Cir. 2003) ("It is axiomatic that, unless expressly compelled by intrinsic evidence, courts must avoid the addition of a novel limitation."); CCS Fitness v. Brunswick Corp., 288 F.3d 1359, 1368 (Fed. Cir. 2002) (parties "cannot use the intrinsic evidence's silence to narrow the ordinary meaning of an unambiguous claim term."); Smithkline Diagnostics, Inc. v. Helena Laboratories Corp., 859 F.2d 878, 882-83 (Fed. Cir. 1988) (a limitation that did not specifically include or exclude any chemical compounds, could not be read to exclude a particular compound).

Additionally, MacPhee's testimony does not contradict the intrinsic evidence. At his deposition, MacPhee observed that the patent claims do not specify a particular method of reducing air in fabric (MacPhee dep. at 106). He also interpreted the essential "preferred but not exclusive" language to "mean that any method of reducing air content is covered" (*id.*). That interpretation does not contradict the intrinsic evidence in a manner that would render his testimony unreliable. *See* Phillips, 415 F.3d at 1318 (quoting Key Pharms. v. Hercon Labs. Corp., 161 F.3d 709, 716 (Fed. Cir. 1998) (a court should discount any expert testimony 'that is clearly at odds with the claim construction mandated by the claims themselves, the written

description, and the prosecution history, in other words, with the written record of the patent.'"). When MacPhee opined that "reduced air content cleaning fabric" includes cloth that "has been wound onto a roll with sufficient tension to reduce its air content in comparison to its air content prior to its winding" (MacPhee report at 19), he offered an opinion that was not precluded by the claim language. *See* Interactive Gift Express, Inc. v. Compuserve Inc., 256 F.3d 1323, 1333 (Fed Cir. 2001) (refusing to read in a limitation when the claim language did not disclose that limitation, and further noting that nothing precluded the appellant's claim construction).[3]

In light of the court's reliance on the claim language, defendant's argument that the court ignored intrinsic evidence fails. Moreover, the specific intrinsic evidence that defendant cites has already been considered. In the motion for reconsideration, defendant again marshalls its claim that plaintiff's portrayal of the '157 patent during the '976 patent prosecution demonstrates that plaintiff did not believe winding fabric on a roll created reduced air content fabric. *See* Baldwin, 2005 WL 1838451, *9. This argument is unfit for a motion to reconsider for two reasons. First, it is a rehash (*see* Oto, *supra*); second, it takes issue with the court's reasoning, not its apprehension (*see* Bank of Waunakee, *supra*).

Since the court did not exclusively rely on MacPhee, the derivative misapprehension fails. In its motion, defendant states that even under the court's claim construction the court misapprehended the genuineness of the evidence. This statement implies the second misapprehension is independent of the court's purported reliance on MacPhee. But defendant also states that plaintiff's sole evidence that defendant's fabric is reduced-air content cleaning

---

[3] Defendant also argues that the court should not have relied on MacPhee because his testimony was unreliable and clearly biased. The alleged bias is fodder for cross-examination and impeachment, not a ground for exclusion.

fabric is MacPhee (*see* def. motion to reconsider at 10-11). The two grounds on which defendant seeks relief are thus related, with the second hinging on the validity of the first. As stated above, the court's claim construction rested primarily on the claim language and other intrinsic evidence, and defendant's contentions to the contrary are insufficient grounds for reconsideration.

Defendant's motions *in limine* are variations on the theme presented in the motion to reconsider, which was to erase from the picture MacPhee, who defendant believes is the linchpin of plaintiff's entire case. The motions brought pursuant to FED. R. CIV. P. 26 and 37 seek to exclude MacPhee's testimony and his expert report as a sanction for a tardy disclosure of the "winding" theory contained in MacPhee's report. The motion raised under FED. R. EVID. 702 attempts to show that MacPhee is not a qualified expert. Before addressing the merits of those motions, we offer two observations. First, and as discussed above, the claim construction was the product of textual analysis and focused on intrinsic evidence. Second, efficiency would have been better served had defendant challenged MacPhee's credentials and the admissibility of his report in tandem with the summary judgment motion. Nevertheless, these challenges have now been briefed, and we turn first to the Rule 702 motion.

Under Rule 702, a qualified expert may offer testimony that will help the trier of fact understand the evidence "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Defendant defines the relevant scientific field as the "air content of cloth" field, and then urges the court to find MacPhee unqualified because he has neither expertise nor experience in that field. Defendant also emphasizes that MacPhee never measured the air content of cloth before, and that his lack of

knowledge in the field necessitated his consultation with others before he measured the air content in defendant's cloth. Plaintiff asserts that the concept of air reduction in cloth is simple, and that it can be measured by solvent immersion or determining the difference between total cloth volume and fiber volume.

We believe that the ground staked by an "air content of cloth" field is too narrow. This does not mean that an individual with expertise in the graphics arts field is automatically qualified to measure air content in fabric and present his findings to the court. The proper scope is somewhere in the middle, and at this stage we will not define with inflexible terms the parameters of the relevant field of expertise. Defendant faults MacPhee for having consulted others before he developed his own methodology for measuring air content. Rule 702 does not prohibit consultation, ban the acquisition of knowledge from other sources, or disqualify any witness who consults with or learns from others. In his discussions, MacPhee addressed his concerns regarding proper and accurate testing procedures (*see* MacPhee dep. at 23-24). The fact that MacPhee spoke with others would seem to add to his qualifications, rather than disqualify him. MacPhee's extensive resume and experience qualifies him as an expert, satisfying the first Rule 702 requirement. To assess the reliability prong of Rule 702, we apply the standards set forth in Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993).

Under Daubert, expert testimony relating to scientific evidence must be relevant and reliable. *Id.* at 589. To determine the reliability of scientific evidence, a court considers whether the methodology, theory, or technique (1) has been tested, (2) has been subjected to peer review and publication, (3) has a potential or known rate of error, and (4) has been accepted by the relevant professional community. Daubert, 509 U.S. at 593. These guideposts are non-exclusive (Deimer v. Cincinnati Sub-Zero Prods., 58 F.3d 341, 344 (7th Cir. 1995)), and

the Rule 702 inquiry is flexible. Daubert, 509 U.S. at 593; United States v. Conn, 297 F.3d 548, 555 (7th Cir. 2002). Rule 702 is "notably liberal" and favors admissibility. Krist v. Eli Lilly & Co., 897 F.2d 293, 298 (7th Cir. 1990).

According to defendant, MacPhee failed to employ the established "DuPont" testing method when he measured the air content in the fabric samples that he examined. In response, plaintiff points out that defendant's expert, Paul Jadrich, accepted the solvent immersion test that MacPhee used, and that MacPhee did use the DuPont test when he calculated the difference between total cloth volume and fiber volume. Jadrich agreed that soaking fabric in liquid until bubbles no longer surfaced was a method for removing air from the fabric (Jadrich dep. at 113, 115). MacPhee's measurements were based on his own data, not on data produced by another source (MacPhee dep. at 29-32). In addition to the soak/solvent immersion test, MacPhee also used the DuPont testing method (*id.* at 29, 37-38). He tailored his methodology in order to be consistent with the DuPont method (*id.* at 62). The parties do not present any evidence that any testing methodology has been subjected to extensive peer review, or to the importance of publishing, relating to air-in-content fabric. We do not accord much weight to either factor, or to the known rate of error. *See* Bourelle v. Crown Equip. Corp., 220 F.3d 532, 536 (7th Cir. 2000) ("there is no requirement that the district judge consider each one of [the Daubert] "guideposts" when making an admissibility ruling under Fed. R. Evid. 702."). Jadrich's comments on the solvent immersion test and MacPhee's use of the DuPont method show that MacPhee's tests were accepted within the relevant professional community, as it has been established by the parties' memoranda.

There is no indication that MacPhee did not apply his methodology to the facts of the case with accuracy. Conn, 297 F.3d at 557. Defendant contends that MacPhee has not

conducted independent research in the area and that his testimony was prepared for litigation. Notwithstanding the fact that Daubert does not mandate that an expert engage in any specific amount of independent research, MacPhee's consultation with other professionals and his concern for accurate testing procedures imbue his testimony with indicia of reliability. Indeed, the fact that he spoke with DuPont and others to obtain information, and to structure his own testing methodology, shows that he supplied more than "a bottom line" and is useful for explaining things to the court. Zenith Elecs. Corp. v. WH-TV Broad. Corp., 395 F.3d 416, 419-420 (7th Cir. 2005). MacPhee conducted tests to substantiate his opinion. See Deimer, 58 F.3d at 344-45. His conclusions do not seem so detached from his methodology and test results. If the results and research were inconsonant, then bias could be evident from a pre-determined conclusion that would vitiate the reliability of his opinions. Any bias that MacPhee may harbor should be tested during cross-examination.

Defendant also faults MacPhee for measuring the thickness of the unwound cloth because that technique does not yield the same result as measuring the volume of air in the cloth. In response, plaintiff contends that Jadrich said that measuring thickness could serve as a stand-in measurement for volume calculations. Defendant labels that contention a mischaracterization, and stresses that the experts arrived at inconsistent conclusions. Defendant states that its expert, Jadrich, observed that the cloth's thickness reduces when the cloth is not stretched. But, according to defendant, MacPhee concluded that the cloth's thickness reduces when the cloth is stretched. We do not believe the issues surrounding the length of the fabric are issues of substantial import. First, MacPhee noted at his deposition that the difference in a fabric's length when it was on and off the role was negligible to the point that it was not significant (MacPhee dep. at 79). Moreover, the issue of the length of the

fabric is not dispositive. The important issue is that both experts agreed that when a fabric's thickness is reduced, that there is also a reduction in volume. *See* Jadrich dep. at 115 (agreeing that when the thickness of a fabric decreases, the potential air volume decreases proportionately); *id.* at 116-17 (an air reduction in cloth occurs when its thickness is decreased, but its area is not increased); MacPhee dep. at 73 ("the more a cloth is compressed in thickness, the less air volume will be in it."). In light of the agreement on this point, defendant's attack on MacPhee's method for using thickness to measure volume fails.

By presenting its experts as qualified and reliable in contrast to its depiction of MacPhee, defendant fails to provide a baseline with which to measure all experts in the case. As a result, the inquiry often boils down to a comparison between the experts that requires credibility determinations, which cannot be made on a summary judgment motion. At this stage MacPhee's credentials, his explanation and understanding of the testing methods, and other reasons listed above show that he is qualified to provide an expert opinion in this matter.

In its second motion *in limine*, defendant contends that plaintiff disclosed its "winding" theory after fact discovery closed in violation of Rule 26(e).[4] Defendant argues that this late disclosure warrants exclusion of MacPhee's expert report under Rule 37(c). And plaintiff counters that no Rule 26 violation occurred, and even if did not seasonably amend its prior responses and interrogatory answer, any late disclosure was harmless. In light of the ruling

---

[4]Under Rule 26:
[a] party who has made a disclosure under subdivision (a) or responded to a request for discovery with a disclosure or response is under a duty to supplement or correct the disclosure or response to include information thereafter acquired if ordered by the court or in the following circumstances:
....
(2) A party is under a duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

on the motion to reconsider, MacPhee's expert report did not offend Rule 26(e). We also agree with plaintiff, but on different grounds, that even if Rule 37(c) is implicated, exclusion is not the remedy.

In response to defendant's interrogatory number 3, which requested plaintiff's claim construction, plaintiff described "reduced air content cleaning fabric" in terms of calendared fabric.[5] In specifically mentioning "winding" in his expert report, MacPhee discussed a process that reduced the air content in the cleaning fabric. As discussed above, the claim does not specify an exclusive process used to produce reduced air content cleaning fabric. Similarly, the interrogatory response does not describe the fabric purely in terms such as "calendared fabric," and it does not preclude the use of a process other than calendaring. MacPhee's expert report simply conveys that the winding process could also achieve reduced air content in cleaning fabric. In the interrogatory response, specification and expert report, the term reduced air content is not limited to a specific process used to achieve it.

This consistency distinguishes <u>Loral Fairchild Corp. v. Victor Co. of Japan</u>, 911 F. Supp. 76 (N.D. Ill. 1996), cited by defendant, in which after four years of maintaining a single theory of liability, the defendant presented a new theory of liability after discovery had closed and summary judgment motions had been decided. *Id.* at 80-81. That new theory of liability was directly inconsistent with the prior theory, and the court properly prevented the defendant from switching positions. Similarly, in <u>Holiday Inns, Inc. v. Robertshaw Controls Co.</u>, 560 F.2d 856 (7th Cir. 1977), also cited by defendant, the court barred the plaintiff from raising a

---

[5] Interpreting the claim language "a reduced air content cleaning fabric having an air content by volume reduced by 1 to 50 percent" plaintiff wrote:
    Yes, Siebert fabric has presence of long fibers which are indicative of calendaring, which will thin and produce reduced air content in the fabric. Fabric having reduced air content by volume more than 50% is not commercially viable since fabric will not hold an amount of solvent suitable for cleaning.

theory of liability that it did not disclose during discovery. During discovery, the plaintiff's theory was that an accident was caused by a defective over-temperature thermostat on a deep fryer. Four days before trial, the plaintiff revealed its theory that the deep fryer lacked an oil level sensing device. As in Loral, the second theory of liability was inconsistent with the first theory, and timely notice was absent. In contrast, plaintiff has consistently construed the relevant term as a fabric that has undergone a process that reduces its air content. Moreover, if we view the "winding" theory as "corrective information," Rule 26(e) was not violated because defendant knew that plaintiff construed the term "reduced air content cleaning fabric" to include fabric that had been thinned, which reduced the air content. *See* Rule 26(e)(2) (no violation if the "corrective information" is made known to the other parties during the discovery process); Gutierrez v. AT&T Broadband, LLC, 382 F.3d 725, 733 (7th Cir. 2004).

Even if plaintiff should have amended its interrogatory response to reflect the "winding" theory prior to the close of fact discovery, exclusion is improper because the discovery violation is harmless under Rule 37(c)(1).[6] The Rule 37(c)(1) remedy of exclusion is automatic and mandatory unless the discovery violation was either justified or harmless. Salgado v. Gen. Motors Corp., 150 F.3d 735, 742 (7th Cir. 1998). In assessing whether a violation is harmless we consider four factors: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." David v. Caterpillar, Inc., 324 F.3d 851, 857 (7th Cir.

---

[6] Rule 37(c)(1) provides in relevant part:
A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.

2003). We have broad discretion when determining whether a violation is harmless or justified, and need not make explicit findings to support a finding. *Id.*; Packman v. Chicago Tribune Co., 267 F.3d 628, 646-47 (7th Cir. 2001).

Defendant contends that it has been prejudiced by plaintiff's late disclosure of the winding theory because if plaintiff had timely disclosed this theory, then it would have been able to raise an invalidity defense. In its rebuttal expert reports, defendant argued that the '976 patent was obvious and anticipated, and therefore invalid. These arguments were not presented in the initial expert reports. For the purpose of the summary judgment motion the court struck these supplemental arguments and observed that "[d]efendant had the burden to prove that the patents-in-suit are invalid for obviousness or anticipation, if it chose to pursue those arguments, and arguments to that extent should have been included in its initial expert report." Baldwin v. Siebert, 2005 WL 1300763, *2, 2005 U.S. Dist. LEXIS 10692 (N.D. Ill. 2005). Thus, it was not plaintiff's inclusion of the winding theory in MacPhee's expert report that barred the invalidity defenses at this stage. Rather, defendant decided not to incorporate those defenses in its initial expert reports, and that decision now precludes their late inclusion. By striking defendant's supplemental arguments, we did not categorically bar any invalidity defenses that defendant may raise at trial. The fact that those defenses may play a significant role at trial in order to challenge the validity of plaintiff's patent further indicates the lack of prejudice to defendant.

Moreover, plaintiff did not willfully fail to disclose the winding theory. When the court struck defendant's rebuttal expert reports, we noted that the exclusion of an invalidity defense was willful in the sense that it was not inadvertent. Here plaintiff has consistently maintained that the thinning of fabric produces reduced air content cloth. That MacPhee's report

specifically mentions a method of thinning, winding or rewinding on a roll, merely provides evidence that defendant's cloth is actually reduced-air content cloth (if it can be proven that winding/rewinding sufficiently reduces air content). We observed in our summary judgment order that whether or not defendant's cloth was wound in a manner that sufficiently reduced air content was an issue for another day. Baldwin, 2005 WL 1300763, *9. That is still the case.

## CONCLUSION

For the foregoing reasons, defendant's motion for reconsideration and motions in limine are denied.

JAMES B. MORAN
Senior Judge, U. S. District Court

Dec. 21, 2005.