# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

BALDWIN GRAPHIC SYSTEMS, INC., )
a Delaware corporation, )
)
        Plaintiff, )
)
vs. ) No. 03 C 7713
)
SIEBERT, INC., an Illinois corporation, )
)
        Defendants. )

## MEMORANDUM OPINION AND ORDER

This case went through a metamorphosis when plaintiff, which first accused defendant of reducing air content by calendaring, learned that was not so. It then switched to a new theory, that air content reduction was accomplished by winding on a core. Defendant argued that the claim language did not support such a construction, but the court disagreed. The defendant has now advanced a different contention: that any air reduction must be accomplished before the fabric is wound on a core. That change in the argument has some persuasive force, but it has not been fully considered by the parties. In the meantime, we note that I will be gone from Christmas until the end of January and trial is set for February 5, the day I return. How this new wrinkle affects the case should probably be resolved by December 22, 2006, but we leave to the parties how and whether that should be done.

Those time constraints also dictate that rulings on the motion *in limine* be forthcoming. Six have been filed by plaintiff. The first is to exclude duplicative expert testimony. Plaintiff argues that defendant's two experts will duplicate each other when testifying about invalidity. Defendant contends it will structure the testimony so that it will not be duplicative. But we

think it is up to defendant to orchestrate the testimony, and we cannot know how well it has done until we listen to the second expert. The first motion is denied.

The second motion seeks to exclude Siebert's indefiniteness defense. That motion is also denied. The defense is a question of law, Union Pacific Resources Co. v. Chesapeake Energy Corp., 236 F.3d 684, 692 (Fed.Cir. 2001), and we see no reason to end the argument prior to trial. We recognize that one cannot determine whether a fabric on a roll has reduced air content just by looking at it. We also are mindful that the issue is not whether or not a fabric on a roll has less air content than it does when it is laid flat. Rather, it seems to the court the issue is whether or not the fabric, when transferred from a larger roll during the manufacturing process to a smaller core, is subjected to a winding method so as to reduce the air content from what it was on the larger roll for the purpose of stabilizing the solvent.

The third motion seeks to exclude opinion testimony regarding obviousness. To some extent plaintiff rests on the notion that the testimony of two experts will be duplicative, and we deny it for the same reasons we denied the first motion. To some extent plaintiff rests on the notion that an expert must have been skilled in the art at the time of invention, but that is not so. The expert must be qualified to testify about what a person with ordinary skill in the art must have understood at the time of the invention, but the expert's knowledge of that may have come later.

The fourth motion is to exclude as prior art documents not published before the critical date. That motion is granted. Whether any such documents are admissible for other purposes we leave until trial.

The fifth motion seeks to exclude testimony about waived subject matter. Defendant responds by representing that it will be pursuing only three of the defenses, namely patent

misuse, unclean hands, and invention by another. Those subjects are touched upon in defendant's trial brief and its statement of contested issues of facts and law.

We think that is enough. The motion is denied.

The last motion seeks to exclude as hearsay any deposition testimony by two witnesses of any alleged prior use at Hartford, Wisconsin. Defendant responds by claiming that the portions it seeks to introduce are not hearsay. And we, not having copies of the depositions, cannot determine who is right. We therefore will delay ruling until we have been furnished copies – and by that we mean marked-up copies, with the parties highlighting with different colors the testimony they wish to introduce. We are mindful, also, that witnesses residing within 100 miles of the courthouse normally must testify live.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　/s/ James B. Moran
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　JAMES B. MORAN
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Senior Judge, U. S. District Court

Dec 14, 2006.