IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BALDWIN GRAPHIC SYSTEMS, INC., )
                                )
            Plaintiff,          )
                                )
       vs.                      )   No. 03 C 7713
                                )
SIEBERT, INC.,                  )
                                )
            Defendant.          )

## MEMORANDUM OPINION AND ORDER

Plaintiff Baldwin Graphic Systems, Inc. (Baldwin) brought this suit against Siebert, Inc. (Siebert) alleging infringement of three patents for technology devoted to cleaning printing press components. Only one patent, U.S. Patent No. 5,974,976 (the '976 patent), remains in dispute after plaintiff elected not to pursue claims relating to Patent No. 6,035,483, and after the court granted defendant summary judgement on non-infringement grounds for Reissue Patent No. 35,976. The court denied defendant's motion for reconsideration regarding the construction of the claim term, "reduced air content cleaning fabric," since defendant did not posit anything in that motion that the court found new or not previously considered. Defendant now moves for summary judgment based on invalidity, or, in the alternative, for reconsideration of claim construction based on a new theory, and summary judgment, based on non-infringement, if the claim construction is reconsidered. We grant defendant's motion to reconsider our claim construction, and grant its motion for summary judgment based on non-infringement.

## BACKGROUND

The background of this case has been sufficiently set out in our previous opinions. *See*

*e.g.* Baldwin Graphic Systems, Inc. v. Siebert, Inc., 2005 WL 1838451 (N.D. Ill. July 25, 2005); Baldwin Graphic Systems, Inc. v. Siebert, Inc., 2005 WL 4034698 (N.D. Ill. Dec. 21, 2005); Baldwin Graphic Systems, Inc. v. Siebert, Inc., 2006 WL 1554529 (N.D. Ill. June 1, 2006); Baldwin Graphic Systems, Inc. v. Siebert, Inc., 2006 WL 3718074 (N.D. Ill. Dec. 14, 2006). We revisit this background only to the extent necessary to decide the pending motion.

Baldwin initially filed the instant action against Siebert based on its belief that Siebert calendered its fabric, a process by which air is reduced in the fabric by pressing it between two heated rollers. After discovery, Baldwin learned that Siebert's accused fabric was in fact not calendered, nor was its air reduced by any other mechanical process prior to being wound on the roll. At the Markman hearing on June 16, 2005, Baldwin argued that the claim term, "reduced air content cleaning fabric," did not exclude fabric whose air content was reduced by the process of winding or rewinding on a roll. Siebert argued that the patent, the prosecution history, and Baldwin's initial basis for infringement, precluded such a construction, and that calendering was the only method of air content reduction envisioned by the patent. We disagreed, noting that claim construction is an analysis wholly independent from plaintiff's theory of infringement and is not influenced by such. Baldwin, 2005 WL 1838451. We further found that the patent, while mentioning only the method of calendering for reducing air content, specifically stated that calendering was "not the exclusive method" of reducing air content. *Id.*

Siebert moved for reconsideration of that decision on September 1, 2005, on grounds that we gave too much weight to extrinsic evidence, namely the report of John McPhee, plaintiff's expert. We denied Siebert's motion, finding that we did not principally rely on McPhee's report, but relied mainly on the claim language and other intrinsic evidence.

Baldwin, 2005 WL 4034698.

In its current motion, Siebert devotes most of its attention to its contentions that the patent is invalid based on anticipation, obviousness and indefiniteness. There may well be merit to one or more of its contentions. The specification does not suggest reducing air content by winding on a core, and neither do the claims (with the possible exception of claim 26) – winding on a core may well result incidentally in some reduction of air content, and that procedure has been around for a very long time. A person with ordinary skill in the art would have a difficult time trying to determine what level of tension might trigger patent infringement. We do not, however, determine whether any of those contentions justifies summary judgment. Rather, we revisit claim construction.

Alternatively, Siebert puts forth a new theory that it contends requires us to reconsider our construction of the claim term. Siebert argues that it is clear from the language of the patent, its claims and specification, and the prosecution history, that the term "reduced air content cleaning fabric" indicates a fabric whose air content is reduced by some means prior to winding on a core to form a roll. Siebert goes on to argue that in light of this construction, and since there is no genuine issue of material fact that Siebert's fabric does not go through any mechanical process before being wound on the roll, it is entitled to summary judgment on grounds of non-infringement. Upon close consideration of parties' arguments, the patent, and the prosecution history, we agree with Siebert's proposed claim construction and grant its motion to revise our construction of the claim term "reduced air content cleaning fabric." We further grant its motion for summary judgment based on non-infringement.[1]

---

[1] Additionally, we grant Siebert's motion to file an over-length brief in support of its motion for summary judgment. Furthermore, we find moot Baldwin's argument that we should disregard Siebert's exhibits 28B and 28C (as they were not disclosed during discovery) because, as will be evident below, we do

## ANALYSIS

Generally motions for reconsideration are only appropriate to correct manifest errors of law, or to present newly discovered evidence. Oto v. Metropolitan Life Ins. Co., 224 F.3d 601, 606 (7th Cir. 2000); United Mun. Leasing Corp. v. Lexington Corporate Properties, Inc., 1997 U.S. Dist. LEXIS 14428, 1997 WL 587753, *2 (N.D.Ill. 1997). Such motions are valuable where the court misunderstands a party, makes a decision outside of the adversarial issues presented by the parties, or makes an error of apprehension. Bank of Waunakee v. Rochester Cheese Sales, Inc., 906 F.2d 1185, 1191 (7th Cir. 1990). Baldwin argues that Siebert's theory that any reduction in air content must occur prior to the fabric being wound on the roll is not new, but merely a rehashing of its prior theory that calendering is the only process envisioned by the '976 patent to reduce air content. We do not agree. Siebert's earlier argument was that calendering was the only method of reducing air content. We disagreed with that argument because, among other reasons, the patent specifically stated that calendering was not the exclusive method of reducing air content. Here, Siebert is not arguing that there is only one method of reducing air content. Rather, it appears to concede that there may be many methods. What Siebert argues here is that regardless of the method used to reduce air content, the reduction of air content as envisioned by the patent occurs prior to winding the fabric on the roll. Because Siebert suggests that we made an error of law with respect to our construction of the claim term, and because we find this new theory to be different from the one it posited earlier in this litigation, its motion to reconsider is appropriate. *See* Chamberlain Group, Inc., v. Lear Corp., 2007 U.S. Dist. LEXIS 12004, *5 (N.D. Ill. 2007).

---

not rely on them in our analysis (Baldwin's response to motion for summary judgment at 10). We also find moot Siebert's motion to strike certain paragraphs in Baldwin's statement of material facts for the same reason.

Claim Construction

In order to determine the proper construction for a claim term, we first look at the term as used in the claims themselves. Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005). The two independent claims, claims 1 and 14, standing alone, do not aid much in our construction analysis, for while both recite the term, "reduced air content cleaning fabric," both claims are very broad and vague, neither teaching the winding of the fabric on a core. At first glance, these claims appear to envision an invention that does not require a core. But given that every manifestation of Baldwin's invention throughout the specification and prosecution history includes a fabric roll on a core, and given that the patent was an improvement on an earlier pre-soaked fabric roll wound on a core, we decline to read these claims as being so much broader than what the invention as a whole teaches. *See* Phillips, 415 F.3d at 1316 (citing Markman v. Westview Instruments Inc., 517 U.S. 370, 389 (1996)("[A claim] term can be defined only in a way that comports with the instrument as a whole.")) Yet, because of the lack of specificity in the independent claims, we must look to the other claims to determine the construction of the disputed term. Forest Laboratories, Inc. v. Abbott Laboratories, 239 F.3d 1305, 1310 (Fed. Cir. 2001) ("We ... construe independent claims consistently with the claims that depend from them.").

Once outside claims 1 and 14, our analysis is complicated by the fact that the term "reduced air content cleaning fabric" does not appear in any of the other claims. Instead, the dependent claims use a variety of ambiguous terms, including "cleaning fabric," "fabric," "strip," "strip of cleaning fabric," and in one instance, "strip of cloth." These terms are ambiguous because they are often used to indicate both a "reduced air content cleaning fabric" and a fabric whose air content has not yet been reduced. In order to determine the meaning

of the disputed term, we must first discern which instances of the word "fabric," and its equivalents, translate to "reduced air content cleaning fabric." To do so, we resort to the rules of construction.

To interpret the meaning of the word "fabric," and its equivalents, we will first look at the word in the context of the dependent claim we are looking at, in light of the independent claim upon which that claim relies. Gart v. Logitech, Inc., 254 F.3d 1334, 1341(Fed. Cir. 2001). Where possible, we give claim terms their ordinary and plain meanings, so as to be understood by a person of ordinary skill in the art. Smithkline Diagnostics, Inc. v. Helena Laboratories Corp., 859 F.2d 878, 882 (Fed. Cir. 1988). Additionally, under a principle of consistency, it is presumed that "the same terms appearing in different portions of the claims should be given the same meaning unless it is clear from the specification and prosecution history that the terms have different meanings at different portions of the claims." Fin Control Systems Pty, Ltd. v. OAM, Inc., 265 F.3d 1311, 1318 (Fed. Cir. 2001). We understand that consistency is especially important when discussing multiple instances of a claim term within any one claim. Digital Biometrics, Inc. v. Identix, Inc., 149 F.3d 1335, 1345 (Fed. Cir. 1998)("[T]he same word appearing in the same claim should be interpreted consistently."). We also read the term in light of the specification and the prosecution history, as "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." Phillips, 415 F.3d at 1313; Rexnord Corp. v. Laitram Corp., 274 F.3d 1336, 1342-43 (Fed. Cir. 2001).

We will begin our analysis with the two claims that appear to be the most appurtenant to the issue at hand, claims 18 and 26. However, in order to interpret these claims we first

must set out and interpret the independent claim upon which they both depend, claim 14. That claim reads:

> 14. A method for making a cleaning system comprising: reducing air content of a *strip of cleaning fabric* by 1 to 50 percent to form a *strip of reduced air cleaning fabric*; and contacting said *strip of reduced air content cleaning fabric* with a low volatility, organic compound solvent which does not evaporate readily at ambient temperature and pressure and pre-soaking and saturating said *reduced air content cleaning fabric* with said solvent.

Reading the terms of claim 14 in context, we find that the patentee used two different terms to mean two different things. "Where claims use different terms, those differences are presumed to reflect a difference in the scope of the claims." Forest Laboratories, 239 F.3d at 1310. The first term, "strip of cleaning fabric," refers to a cleaning fabric whose air content has not yet been reduced. We find this to be so because that term, a noun, is being modified by the verb "reducing." Thereafter in the claim, the term used is "reduced air content cleaning fabric," because the reducing of the air content has already occurred. The strip of fabric which comes into contact with the solvent, then, is already reduced in air content.

Additionally, while claim terms should generally be read consistently throughout a claim, here there is a clear manifestation that these two terms be read differently. First, the terms themselves are different, one being merely "cleaning fabric," while the other is "reduced air content cleaning fabric." Second, as stated above, reading the first term in context with a modifier such as "reducing," indicates that the patentee intended that term to mean a non-reduced air content cleaning fabric.

This reading is not only clear from the claim itself, but is supported by both the specification and the prosecution history. The specification states that "the reduced air content provides for an absorptive solvent amount and a reduced displacement of solvent

during storage and thus less shift or no shift in the fabric roll's center of gravity and allows for better and more even distribution of the solvent within the fabric roll" ('976 patent, col. 7, ln. 20-25, Bald. App. 4). During prosecution of the patent, Baldwin made clear that the air content of the fabric is reduced prior to soaking it in the solvent. In response to an objection by the examiner, Baldwin asserted that "[b]y reducing the air content of the cleaning fabric prior to saturation, the present invention improves the wettability of the fabric and improves the distribution of the solvent in the fabric" ('976 patent prosecution history, FH 0764-65, FH 0783-84, Bald. App. 19). Baldwin also made clear that saturation itself is not a method for reducing the air content of the fabric as taught by the invention ('976 patent prosecution history, FH 0665-6, FH 0764-65, Bald. App. 19). Therefore, while steps in a method need not necessarily be performed in the order they are listed in a patent, here it is clear that the step of reducing air content of a fabric necessarily must occur prior to saturation. *See* Loral Fairchild Corp. v. Sony Corp., 181 F.3d 1313, 1332.

We turn to claim 18, which reads:

18. The method as defined in claim 14 including providing an elongated core wherein said *strip of cleaning fabric* is wrapped about said elongated core prior to contacting said *strip of cleaning fabric* with said solvent.

Here we find that in both instances in claim 18, the term "strip of cleaning fabric" refers to "reduced air content cleaning fabric." It is clear that in the second instance, the term "strip of cleaning fabric," means "reduced air content cleaning fabric." This is because, as discussed above, the invention requires that the air content in the fabric be reduced prior to coming in contact with the solvent. Reading the term as indicating a non-reduced air content cleaning fabric would go against the principles of the invention, as it would be reading the claim to involve contacting non-reduced air content cleaning fabric with solvent. Secondly,

we must attempt to construe all like terms alike, unless it is clear from the patent that they are to be construed differently. Unlike the distinction made between terms in claim 14, here there is no modifying verb used in conjunction with the first use of the term, "strip of cleaning fabric," which would make clear the manifest intent that the term denote a non-reduced air content cleaning fabric. Without that manifest intent, we must construe these claims to mean the same thing, and thus we construe them both to mean "reduced air content cleaning fabric."

We then turn to claim 26, which states:

> 26. The method as defined in claim 14 wherein said step of reducing air content of said *strip of cleaning fabric* further comprises the step of increasing the length of said *cleaning fabric* by at least about 25% without substantially effecting [sic] the diameter of said fabric roll after the *cleaning fabric* has been wound about a core.

This claim is also dependent on claim 14, which delineates the general method for the invention. Claim 26 permits an additional step to the method -- that of increasing the length of the cleaning fabric. We find that although generally we are required to construe like terms consistently, here, as in claim 14, it is clear from the context that these two terms refer to different states of the fabric. The terms "strip of cleaning fabric" and "cleaning fabric," when mentioned in the first clause of the claim, refer to non-reduced air content cleaning fabric, because in both instances the terms are being modified by a word signifying an element of an air reduction process, *i.e.* "reducing" or "step of increasing". Because "increasing" is an additional step in the air-reduction process, it necessarily implies the fabric at issue has not already had its air content reduced. However, the term "cleaning fabric," in the second clause of the claim, refers to "reduced air content cleaning fabric" because it is no longer being used in conjunction with the process of reducing air content (of which increasing length is a step), but with the result of the air content reduction – that the diameter of the roll after the cleaning

fabric is wound is not substantially affected.

Just as in claim 14, we have claim terms that are defined differently within the claim. While here, unlike in claim 14, the claim terms themselves are not different, there is the presence of the modifiers, "reducing" and "step of increasing," which demonstrate a manifestation of the intent that those terms, as used with those modifiers, relate to non-reduced air content cleaning fabric. Yet, it would be illogical to construe the last term as also meaning non-reduced air content cleaning fabric, as construing the term in that way would read, "without substantially effecting [sic] the diameter of said fabric roll after the *non-reduced air content cleaning fabric* has been wound about a core." This reading makes no sense because only the action of reducing the air content would increase the length of the fabric without increasing the diameter of the fabric roll. Winding non-reduced air cleaning fabric onto a roll would either not increase the length of the fabric, or it would increase the diameter of the roll. Nor do we see how the step of reducing air content could be achieved after the fabric is wound on the roll. If one of the advantages of reducing air content is increasing the length of the fabric, that is not an advantage that can be wrought from a process that reduces air content after the fabric is already wound. Thus, we find that the only logical meaning of the term "cleaning fabric," in the context of the last clause of claim 26, is "reduced air content cleaning fabric."

There is a possibility that the clause as a whole could support an argument that claim 26 envisions reduction in air content through winding the fabric on the roll. We find this possibility unlikely, however, as we find it would require more specificity than is present with regards to the method of winding. As Baldwin's expert John McPhee conceded, not every winding of fabric onto a roll has the effect of reducing air content (expert rebuttal report of

John McPhee, at 20, Siebert App. 25). We find that to interpret this claim to cover air content reduction through winding or rewinding would require additional language that is not present here, and thus the claim should not be so construed.[2]

Having parsed the term "fabric," and its equivalents, in the relevant claims 18 and 26, into the more precise terms of "reduced air content cleaning fabric" and non-reduced air content cleaning fabric, we can then determine whether or not the term "reduced air content cleaning fabric" should be construed as requiring that the air content of the fabric be reduced prior to being wound on the core to form a roll. It is clear from the discussion above that claims 18 and 26, dependent on claim 14, envision that the air content of the fabric is reduced prior to it being wound on the roll. Claim 18, as construed, teaches the wrapping of the reduced air content fabric about an elongated core prior to its contact with the solvent. This implies the air content is reduced prior to the wrapping because, as the claim reads, what is wrapped around the core is reduced air content cleaning fabric. Claim 26 teaches that the step of increasing the length of the non-reduced air content fabric can be achieved without affecting the diameter of the fabric roll after the subsequently reduced air content fabric is wrapped around the core, again implying reduction in air content prior to wrapping.

By performing this same analysis throughout the claims, we are able to distinguish the patentee's intent to refer to non-reduced air content cleaning fabric, from its intent to refer to

---

[2] Even if this claim were construed in a way as to support an argument of air reduction through winding or rewinding, we find that the construction of this claim in this way cannot be imported to the other claims in the patent, which we find clearly do not envision air reduction through winding or rewinding. Furthermore, claim 26 covers an increase in the length of the fabric (through air reduction) of at least about 25%. There has been no evidence that Siebert's fabric's length has been increased by this amount, and Baldwin has not even asserted that Siebert infringed claim 26. Thus, even if we were to construe this claim alone to cover reduction in air content through winding or rewinding, there has been no allegation of infringement, nor has there been any evidence of the same, and thus Siebert would be entitled to summary judgment on that point.

"reduced air content cleaning fabric," in almost all the claims. The only claims where, even after our analysis, the term could still mean either substance, is in claims 8 and 10, which talk about the composition of the fabric in general. However, the use of either term in these two claims has no effect on the question of whether or not "reduced air content cleaning fabric" means a fabric whose air content is reduced prior to winding it on a core to form a roll.

Our position that the claim term does require a reduction in air content prior to winding is further supported by the patent specification. The abstract states: "The system includes a cleaning fabric treated to reduce the amount of air volume the cleaning fabric contains. The cleaning fabric is saturated to functional equilibrium with a low volatility organic compound solvent. The cleaning fabric is wrapped around an elongate core to form a fabric roll" ('976 patent, col. 2, ln. 34-39, Bald. App. 4).

Here, like in claim 14, the term "cleaning fabric" is modified by its treatment to reduce air content. Thereafter in the abstract, the term "cleaning fabric" necessarily refers to "reduced air content cleaning fabric," which necessitates the reduction in air content prior to the fabric being wound on the roll.

The summary of the invention states this even more clearly when it states that "[a] cleaning fabric with a reduced air content is wrapped around the core to form a fabric roll" ('976 patent, col. 3, ln. 65-66, Bald. App. 4). The use of the word "with" implies that the fabric being wound on the roll has already had its air content reduced prior to winding. Later, in the broad recitation of the method, the patent states that "[t]he saturated cleaning fabric is wrapped around a core to form a pre-soaked fabric roll" ('976 patent, col. 4, ln. 32-33, Bald. App. 4). Because, as discussed above, the air content of the fabric must be reduced prior to saturation, it follows that here the air content is reduced prior to winding.

The preferred embodiment, in conjunction with the relevant claims, teaches that the invention covers not only saturation of the fabric prior to winding, but saturation after winding as well, or both saturating before and after winding. In one section it states: "The fabric is pre-soaked and saturated with a low volatility organic compound solvent, as described in more detail herein below, before or after it is wrapped around the core to form roll in any convenient manner" ('976 patent, col. 5, ln. 58-61, Bald. App. 4). It is clear that the term, "fabric," means "reduced air content cleaning fabric," because just as in claim 18, it is being used in conjunction with contacting the solvent, which can only be done with fabric whose air content is already reduced, according to the invention. The subsequent pronoun, "it," then necessarily refers to the same term, and thus means "reduced air content cleaning fabric." By reading this sentence as such, the patent clearly envisioned the reduction in air content taking place prior to winding on the roll, because the soaking of the reduced air content cleaning fabric can occur either before or after the reduced air content cleaning fabric is wrapped around the core, which can be done "in any convenient manner."

The preferred embodiment further states:

> In one variation of the method, the fabric is preferably wrapped around the core prior to contacting the same with the solvent. In yet another embodiment, the fabric is wrapped around the core after being saturated with the cleaning solvent. It is also within the invention to saturate the fabric with solvent both prior to and after forming the fabric roll. The wrapping of the fabric can be done in any convenient manner and requires no special apparatus, a wide variety of roll making equipment being readily available for accomplishing the same. ('976 patent col. 9, ln. 1-10, Bald. App. 4.)

Here, again, the term, "fabric," indicates "reduced air content cleaning fabric." The term is used both in the context of saturating prior to winding (which requires the fabric to have its air content already reduced), and then, without any modification of the term, in the context

of winding on a roll prior to saturation. Because no modification of the term has occurred, we should construe it consistently, which requires us to construe it as "reduced air content cleaning fabric." Additionally, if we were to construe this term to include non-reduced air content cleaning fabric, it would not follow that the wrapping could be done in any convenient manner, but would have to be done in such a way as to reduce the air content of the fabric. Thus, construing "fabric" here to mean "reduced air content cleaning fabric," is the only logical construction in light of the context in which the term is used. We find similar examples throughout the specification, thus solidifying our determination that the term "reduced air content cleaning fabric" must be construed as a fabric whose air content is reduced prior to its being wound on a core to form a roll.

The fact that Baldwin's patent states that descriptions in the summary and the preferred embodiment should not be construed as to limit the variations and advantages of the invention to those disclosed, does not alter our determination. (*See* '976 patent, col. 4, ln. 49-54, col. 11, ln. 49-55, Bald. App. 4). We are not importing a limitation from the specification into the claims. *See* SciMed Life Systems, Inc. v. Advanced Cardiovascular Systems, Inc., 242 F.3d 1337, 1340 (Fed. Cir. 2001)("...one of the cardinal sins of patent law-reading a limitation from the written description into the claims"). Rather, we are interpreting the claim terms first in light of their context and logical construction, and referring to the specification and prosecution history to ensure that our construction is the proper one. The one limitation that we draw from the prosecution history, that reduction in air content must occur prior to saturation, is not a "limitation" at all, but part of what makes the invention patentable over

prior art.[3] Hence, our construction of the claim term is not importing a limitation from the specification, but construing the claim in the context of the necessary limitations in the patent itself. We are not limiting the various ways that the reduction in air content can be achieved, rather, we construe the term to indicate that any reduction in air occurs prior to winding the fabric on the roll. We therefore reconsider our prior construction of the term, "reduced air content cleaning fabric," and construe that term to mean "a fabric whose air content has been reduced by some method prior to being wound on a roll."

Summary Judgment

Based on our revised construction of the claim term, we find that Siebert has not infringed Baldwin's patent as a matter of law. Summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "Summary judgment on the issue of infringement is proper when upon construction of the claims and with all reasonable factual inferences drawn in favor of the non-movant, it is apparent that only one conclusion as to infringement could be reached." ADT Corp. v. Lydall, Inc., 159 F.3d 534, 540 (Fed. Cir. 1993).

There is no genuine issue of material fact that Siebert does not reduce the air content of its fabric prior to that fabric being wound on a roll. Siebert's expert, who is also the vice-president of the company that provides the dry wrapped fabric rolls to Siebert, states that neither they nor their supplier, DuPont, performs any mechanical process to reduce the air content of the fabric prior to winding it on the roll (Lombardo expert report at 4, Bald. App.

---

[3] In fact, the possibility that the air content could be reduced by saturation, or after saturation, was a major sticking point for the patent examiner. The examiner indicated in its rejections that reduction in air content after saturation rendered the invention obvious in light of the Meisen patent (U.S. Patent No. 4,712,472, FH 0623, Bald. App. 19), and reduction in air content by saturation rendered the invention unpatentable over Baldwin's earlier '157 patent, which taught a pre-soaked fabric roll. Baldwin distinguished its invention by making clear that reduction in air content had to occur prior to saturation.

24). Baldwin has produced no evidence controverting these statements. Rather, all of Baldwin's evidence centers on the argument that Siebert infringes on Baldwin's patent because Siebert reduces air content in its fabric by winding it on the roll with tension. Baldwin's expert testified that Siebert's fabric appeared to have a reduced air content, and that the reduction in air content was achieved by the winding of the fabric on the roll (McPhee expert report at 13, 26, Siebert App. 11). While there is a dispute as to whether Siebert's fabric does in fact have a reduced air content (*compare* Siebert App. 11 with Baldwin App. 24),this issue is inapposite in light of our revised claim construction. Because it is not controverted that the fabric used by Siebert undergoes no mechanical air reduction process prior to being wound on the roll, we find there to be no genuine issue of fact on that point. Siebert does not infringe Baldwin's patent because Siebert's conduct falls outside the patent's scope with regard to the element of possessing "reduced air content cleaning fabric," as that term is construed. Cole v. Kimberly-Clark Corp., 102 F.3d 524, 532 (Fed. Cir. 1996)("Literal infringement of a claim exists when every limitation recited in the claim is found in the accused device, i.e., when the properly construed claim reads on the accused device exactly.") Therefore, Siebert is entitled to judgment of non-infringement as a matter of law.

## CONCLUSION

For the foregoing reasons we grant Siebert's motions to file an overlong brief and to reconsider our earlier claim construction. In light of the revised claim construction, we grant Siebert's motion for summary judgment on grounds of non-infringement.

JAMES B. MORAN
Senior Judge, U. S. District Court

March 21, 2006.