MHN

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BALDWIN GRAPHIC SYSTEMS, INC., )
                                )
                    Plaintiff,  )
                                )
            vs.                 )   No. 03 C 7713
                                )
SIEBERT, INC.,                  )
                                )
                    Defendant.  )

## MEMORANDUM OPINION AND ORDER

This case is before us again after remand from the Federal Circuit. Originally at issue were three patents for technology devoted to cleaning printing press components that plaintiff Baldwin Graphic Systems, Inc. alleges defendant Siebert, Inc. infringed. While the case was pending before us, plaintiff elected not to pursue claims relating to Patent No. 6,035,483. We granted defendant summary judgment on non-infringement grounds for the remaining two patents, Reissue Patent No. 35,976 (the reissue patent) and U.S. Patent No. 5,974,976 (the '976 patent). Plaintiff appealed. The Federal Circuit affirmed our grant of summary judgment of non-infringement with respect to the reissue patent, but found that we erred in our construction of a claim term in the '976 patent, reversed our grant of summary judgment with respect to that patent, and remanded for further proceedings. Defendant moves for summary judgment, this time under the corrected claim construction, and argues that the '976 patent is invalid for numerous reasons. For the following reasons, we grant the motion.

### BACKGROUND

We have discussed the background of this case extensively in our previous opinions. *See, e.g.*, Baldwin Graphic Systems, Inc. v. Siebert, Inc., No. 03 C 7713, 2007 WL 1610449

(N.D. Ill. Mar. 21, 2007); *id.*, 2006 WL 3718074 (N.D. Ill. Dec. 14, 2006); *id.*, 2006 WL 1554529 (N.D. Ill. June 1, 2006); *id.*, 2005 WL 4034698 (N.D. Ill. Dec. 21, 2005); *id.*, 2005 WL 1838451 (N.D. Ill.. July 25, 2005). We presume a familiarity with this background and revisit the facts only to the extent necessary to decide the pending motion.

Plaintiff alleges infringement of claims 1, 7, 9, 14 and 25, induced infringement of claim 23, and contributory infringement of claim 12. Claims 1 and 14 are independent claims, and the remainder are dependent.[1] At issue during claim construction was the meaning of two similar claim terms: "a reduced air content cleaning fabric" (claim 1) and "reducing air content of a strip of cleaning fabric" (claim 14). Because of the similarity of the terms, the parties and the court addressed the construction of only "reduced air content cleaning fabric." Plaintiff argued that defendant reduced the air content of the cleaning fabric in its device by winding it around a core. Defendant asserted that the claim language did not support such a construction because it was limited to reducing the air content of the fabric by the process of calendaring.

After a <u>Markman</u> hearing, we determined that the claim term, "reduced air content cleaning fabric," in claim 1, was not limited to a particular method for producing reduced air

---

[1] Claim 1 reads:
A device for cleaning a cylinder of a printing press comprising:
    a reduced air content cleaning fabric having an air content by volume of 1 to 50 percent; and a solvent comprising a low volatility cleaning compound which does not readily evaporate at ambient temperatures, and means for introducing said solvent being into said reduced air content cleaning fabric in an amount sufficient for cleaning said cylinder of a printing press.
  Claim 14 reads:
A method for making a cleaning system comprising:
    Reducing air content of a strip of cleaning fabric by 1 to 50 percent to form a strip of reduced air content cleaning fabric; and contacting said strip of reduced air content cleaning fabric with a low volatility, organic compound solvent which does not evaporate readily at ambient temperature and pressure and pre-soaking and saturating said reduced air content cleaning fabric with said solvent.

content cleaning fabric because the '976 specification notes that "[t]he preferred, but not exclusive, method of reducing the air content in the fabric is calendaring." Thus, the claim covered reducing air content in the fabric by methods other than calendaring, including winding or rewinding the fabric on a roll or core. We denied summary judgment of non-infringement on the '976 patent because issues of fact existed regarding whether defendant's method of winding its accused products on a roll to reduce air content infringed the asserted claims.

Defendant subsequently argued, for the first time, that while the claims may not be limited to calendaring as the method for reducing air content, the claims were in fact limited to a particular timing of the air content reduction step relative to winding. In light of this argument we reconsidered our earlier claim construction and instead interpreted the claim term "reduced air content cleaning fabric" to mean "a fabric whose air content has been reduced by some method prior to being wound on a roll." Because defendant's product does not reduce air content before winding of the fabric on the roll, we granted defendant summary judgment of non-infringement of the '976 patent. Plaintiff appealed.

Upon review, the Federal Circuit determined that we erred when we reconsidered the claim term "reduced air content cleaning fabric." Claim 1 and its dependent claims (asserted claims 7, 9 and 12) are pure apparatus claims and have no process limitations. Thus, they are not limited to any particular process or method of making the claimed cleaning system, or to any particular sequence of air content reduction relative to winding. <u>Baldwin Graphic Systems, Inc. v. Siebert, Inc.</u>, 512 F.3d 1338, 1344 (Fed. Cir. 2008). Further, although claim 14 and its dependent claims (asserted claims 23 and 25) are method claims that recite a series of steps, the Federal Circuit determined that these claims fall under the general rule that a

"claim is not limited to performance of the steps in the order recited, unless the claim explicitly or implicitly requires a specific order." *Id.* at 1345. Specifically, the Federal Circuit determined that although the air content must be reduced prior to saturation, the claims contained no basis to require that the air content must be reduced prior to winding on the roll. *Id.* at 1345-46. Finally, the Federal Circuit determined that our original construction of the term as not limited to a particular method (calendaring) for producing reduced air content cleaning fabric was correct. *Id.* at 1346.

And so, that is where we are currently. The terms of the '976 patent have been construed and defendant moves for summary judgment. Recognizing that we previously denied summary judgment of non-infringement under our initial claim construction, defendant now moves for summary judgment based on a finding that the '976 patent is invalid because the patent was anticipated and obvious, and the patent claims are indefinite.

## ANALYSIS

Summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Summary judgment is not appropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We may not make credibility determinations, weigh evidence, or decide which inferences to draw from the facts. *Id.* at 255. Instead, we draw all inferences and view all admissible evidence in the light most favorable to the non-moving party. *Id.*

Each claim of a patent is presumed to be valid. 35 U.S.C. § 282. The statute presumes each claim of a patent to be valid independently of the validity of the other claims. *Id.* The presumption of patent validity may be rebutted only by a showing of clear and convincing

evidence. Pfizer, Inc. v. Apotex, Inc., 480 F.3d 1348, 1359 (Fed Cir. 2007).

Before turning to defendant's specific arguments regarding invalidity, we address one preliminary matter. Plaintiff reminds the court that the Federal Circuit generally construes claims to sustain their viability. *See* Rhine v. Casio, 183 F.3d 1342, 1345 (Fed. Cir. 1999). While we acknowledge this basic tenet, we note that the Federal Circuit construes claims to sustain their viability only if it is possible to do so consistently with the claim language. *Id.* But "if the only claim construction that is consistent with the claim's language and the written description renders the claim invalid, then the axiom does not apply and the claim is simply invalid." *Id.* Until now, we have never addressed invalidity. Nor does the Federal Circuit's opinion make any mention of invalidity. Although not explicitly stated in the opinion, we are confident that this is a case where the Federal Circuit viewed claim construction and validity as two separate issues, and we are therefore not precluded from addressing the question of validity on remand. *See, e.g.,* Liebel-Flarsheim Co. v. Medrad, Inc., 481 F.3d 1371, 1375, 1376 (Fed. Cir. 2007).

1. Anticipation

Defendant contends that the patent is invalid because "the invention was ... in public use ... more than one year prior to the date of the application for patent." 35 U.S.C. § 102(b). Public use includes "any use of [the claimed] invention by a person other than the inventor who is under no limitation, restriction or obligation of secrecy to the inventor." Minn. Mining & Mfg. Co. v. Chemque, Inc., 303 F.3d 1294, 1301 (Fed. Cir. 2002). Whether there has been a public use is a question of law. Am. Seating Co. v. USSC Group, Inc., 514 F.3d 1262, 1267 (Fed. Cir. 2008). But a challenging party must prove subsidiary questions of fact by clear and convincing evidence. Bernhardt, L.L.C. v. Collezione Europa USA, Inc., 386 F.3d 1371, 1378

(Fed. Cir. 2004). If there is a genuine issue of material fact regarding even one claim limitation, summary judgment is inappropriate. *See* Union Carbide v. Shell Oil Co., 308 F.3d 1167, 1188-89 (Fed. Cir. 2002). The patent's effective filing date was May 1, 1995, so any public use before May 1, 1994, would invalidate it.

Defendant's argument is essentially that in late 1993 Quad/Graphics began using a system that included all of the elements of the asserted claims to clean its printing presses. Because Quad/Graphics is a third party with no obligation of secrecy to plaintiff, the invention was therefore in public use during late 1993. This is not the typical "public use" challenge. Usually the defendant argues that the inventor "released control" over her invention, effectively dedicating it to the public. What defendant has proposed is more of an obviousness challenge, by arguing essentially that Quad/Graphics independently developed a system identical to the patented invention. In any event, the challenge fails because defendant does not demonstrate by clear and convincing evidence that the Quad/Graphics system was similar to the patented invention.

As support for its argument, defendant relies on inventory reports, purchase requisitions, and supplier invoices, as well as expert reports and individual declarations.[2] Defendant asserts that Quad/Graphics in 1993 used "Sontara" non-woven fabric in an automated blanket wash system and that its system today uses the same "Sontara" non-woven fabric. Further, defendant contends that Quad/Graphics used this system with Anchor Envirowash 220, a low VOC solvent. In defendant's view, this demonstrates that all the elements of the asserted claims were in public use as early as 1993. But defendant's own

---

[2] Plaintiff argues that much of this evidence is inadmissible either as hearsay or due to lack of personal knowledge. We need not address the admissibility of the testimony at this time because we find that, even assuming its admissibility, defendant has failed to produce clear and convincing evidence that the invention was in public use prior to May 1, 1994.

witness, Vito Lombardo, testified that the name "Sontara" refers to a product line with a large variation of products (Baldwin App. Ex. 15 p. 23). Further, Lombardo testified that Santec, the manufacturer of Sontara, varied the roll tightness in accordance with the specifications of the customer (*Id.* at 23-24, 29-30). On the record before us then, there is a genuine issue of fact as to the level of the reduced air content (if any) of the fabric rolls used by Quad/Graphics in 1993.

A second problem for defendant is that it provided evidence that Quad/Graphics used fabric rolls in its automatic blanket washers and used a low VOC solvent, but it provided no evidence how or if the two were used in conjunction. A logical assumption is that the low VOC solvent was somehow applied to the fabric and used in the automatic blanket washers. However, assumptions are not appropriate for summary judgment. We find that defendant has failed to submit clear and convincing evidence that every element of the invention was in public use prior to the critical date. Defendant's motion for summary judgment on the question of anticipation is denied.

2. Obviousness

Defendant next argues that the patent is invalid because the invention described in the asserted claims was obvious. A patent is considered obvious if "the differences between it and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." 35 U.S.C. § 103(a). Obviousness is a legal determination based on underlying factual inquiries. Eisai Co. Ltd. v. Dr. Reddy's Labs., Ltd., ___ F.3d ___, 2008 WL 2791884, at *2 (Fed. Cir. July 21, 2008). When determining whether a patent is invalid on grounds of obviousness, summary judgment is appropriate when "the content of the prior art, the scope of the patent claims, and the level

of ordinary skill in the art are not in material dispute and the obviousness of the claims is apparent in light of these factors." KSR Int'l Co. v. Teleflex, Inc., 127 S.Ct. 1727, 1745-46 (2007).

To determine whether a patent is obvious, a court must examine (1) the scope and content of the prior art; (2) the differences between the claims at issue and the prior art; and (3) the level of ordinary skill in the art. Graham v. John Deere Co. of Kansas City, 383 U.S. 1, 17-18 (1966); Eisai, 2008 WL 2791884, at *2. In addition to these primary factors, the court may weigh secondary considerations of nonobviousness, such as commercial success, long felt but unmet need, failure of others, and unexpected results. Ormco Corp. v. Align Tech., Inc., 463 F.3d 1299, 1311 (Fed. Cir. 2006). But "a patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art." KSR, 127 S.Ct. at 1742-43. And hindsight reasoning cannot be used to show that a combination of prior art was obvious. Crown Operations Int'l, Ltd. v. Solutia, Inc., 289 F.3d 1367, 1376 (Fed. Cir. 2002).

Prior to KSR, when obviousness was based on the teachings of multiple prior art references, the Federal Circuit required that there be a teaching, suggestion, or motivation that would have led a person of ordinary skill in the art to combine the relevant prior art teachings in the manner claimed. See Ormco, 463 F.3d at 1307-08. This test survives KSR, but in that decision the Supreme Court directed lower courts to reject a "rigid approach" of the test in favor of an "expansive and flexible approach" using "common sense" when assessing whether an invention would have been obvious to a person of ordinary skill in the art. Id. at 1739, 1742-43.

Plaintiff asserts at the outset that there is a dispute among the parties' experts as to the

qualifications of one of ordinary skill in the pertinent art that raises a general issue of material fact. Plaintiff's expert opines that the required skill level is an individual with at least one year of experience with the procedures and components involved in blanket washing, and some knowledge of mechanics and fluid behavior. Defendant's expert opines that the required level of skill is an individual in the non-woven fabrics industry with an engineering degree and three months' experience, or one with at least six months' experience in the non-woven fabric industry. But in defendant's reply brief it asserts that the discrepancy does not preclude summary judgment because, even accepting plaintiff's expert's opinion as to the level of ordinary skill in the art (the more accessible level), the invention of the asserted claims would have been obvious (def's reply br. (dkt. 231) at 12-13). We accept defendant's invitation to adopt the opinion of plaintiff's expert and use it in our analysis.

Thus, the question for the court to consider is: would an individual with at least one year of experience with the procedures and components involved in blanket washing, and some knowledge of mechanics and fluid behavior, have found it obvious to introduce a low VOC cleaning solvent into a reduced air content cleaning fabric in an amount sufficient to clean the cylinder of a printing press. Based on the evidence as presented by the parties, we answer "Yes."

We begin our examination by looking at the prior art. The Federal Circuit interpreted the term "reduced air content cleaning fabric" very broadly, as not limited to any particular method of reducing air content. Baldwin, 512 F.3d at 1346. We have no trouble accepting that under such a broad definition this element was known in the prior art. Defendant provides numerous examples, including the patent prosecution of the '976 patent (discussing the inherent air reduction found in U.S. Patent No. 5,368,157 that might be said to result from "the

pressure of rolling material on a roll"–'976 Patent Prosecution History, 11/25/1997 Office Action at 3); U.S. Patent No. 3,910,521 (disclosing a method of controlling tension applied to a material to be wound on a roll); U.S. Patent No. 4,146,190 (describing a "web roll winder" driven by a variable torque output motor that maintains tension in the web within a desired range); U.S. Patent No. 4,238,084 (describing a method of detecting winding tension, calculating the detected value, and controlling the tension based on that value); and U.S. Patent No. 4,449,675 (describing a system for winding fabric on a roll which utilizes the weight of the supply roll, or minimal mechanical pressure, to maintain air-free layers in a fabric roll).

Another piece of prior art defendant cites is U.S. Patent No. 4,757,763 ("the '763 patent") owned by plaintiff. The '763 patent is generally geared toward an "automatic blanket cylinder cleaner" with the goal of "automatically removing the debris which collects on the blanket cylinder of an offset lithographic printing press during the printing process." '763 patent col.1 ll.12-16. More specifically, the '763 patent describes "[a] device for cleaning the rotating blanket cylinder of a paper printing press with a volatile solvent, said device being of the type including means for feeding cloth fabric and a cloth fabric take-up roll." *Id.* col.13 ll.61-64. Plaintiff argues that this device should not be considered because it is actually a spray bar/dry roll system.[3] Such an argument misconstrues the required analysis. Defendant does not claim that the device in the '763 patent was identical, but rather that it shows that one element of the asserted claims in the '976 patent existed in the prior art. Here, that element is the use of an automatic blanket cylinder cleaner containing a fabric supply roll, volatile solvent introduced onto the fabric prior to contacting the blanket cylinder, and a cloth take-up

---

[3] In a spray bar/dry roll system a dry roll of fabric is mounted on the press and a spray bar, with an accompanying reservoir of solvent, sprays highly volatile solvent onto a small portion of unwound fabric from the roll just prior to cleaning (Bald. App. 12 at pp. 3-6).

roll.

The next piece of prior art defendant relies on is U.S. Patent No. 5,069,128 ("the '128 patent").[4] The '128 patent discloses a non-woven cleaning fabric that is wound on a roll and "impregnated with cleaning liquid before it is set in the cleaning device." '128 patent col.1 ll.45-col.2 ll.17. The patent also discloses using this pre-soaked fabric roll with a cleaning system comprising of a cloth supply roll, a cloth take-up roll, and a means for pressing the cleaning cloth against the cylinder of a printing press to be cleaned. *Id.* col.1 ll.45-53. Again, plaintiff argues that this device in the '128 patent should not be considered because the fabric is housed in an airtight cassette case or is laminated with an impermeable film to prevent transpiration of the highly volatile cleaning compound. Because the cloth is never removed from the cassette, plaintiff contends no comparison can be made. But for the purposes of our analysis, we find that the '128 patent establishes that the prior art taught the element of pre-soaked fabric.[5]

The final element is the low VOC solvent. We have no trouble determining that Anchor Envirowash 220, a low VOC solvent available and known prior to the critical date of the '976 patent, demonstrates the existence of this element.

Having determined that all of the elements of the asserted claims were available in the prior art, we now turn to the question of whether it was obvious for a person of ordinary skill

---

[4] Plaintiff argues that we should not consider defendant's arguments regarding the '128 patent because they were not raised until defendant's reply brief. While true, we believe that this was not done to gain a tactical advantage, but rather to address a point plaintiff first raised in its response brief. In any event, we provided plaintiff leave to submit a sur-reply to address the matter, so it has been fully briefed and plaintiff will suffer no prejudice from our consideration of the arguments regarding the '128 patent.

[5] Defendant disputes that "pre-soaked roll" is an element of the asserted claims, instead arguing that the method claim of "pre-soaking and saturating said reduced air content cleaning fabric with said solvent" places no limitation on when or how the solvent and fabric must come into contact with one another. Because we find that the prior art found in the '128 patent covers both defendant's interpretation and plaintiff's contention that contact between the solvent and fabric must occur on the roll, we need not resolve the issue at the present time.

to combine them in the manner asserted in the '976 patent. Both parties acknowledge that the use of highly volatile solvents adversely affected air quality, and that in response to environmental regulations limiting the release of highly volatile solvents into the air, companies began experimenting with low VOC solvents on the existing spray bar/dry roll blanket wash systems. Plaintiff asserts that such experiments were unsuccessful because low VOC solvents did not evaporate quickly (hence the improved air quality). This lack of evaporation resulted in excess moisture which in turn caused fogging and dripping, adversely affecting the quality of subsequent printing. Defendant argues that the stricter environmental regulations combined with the unsuccessful use of low VOC solvents with the existing spray bar/dry roll system demonstrate the motivation necessary to find an obvious combination of existing uses. We agree.

"Where there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp." KSR, 127 S.Ct. at 1742. The introduction of strict regulations regarding the use of high VOC solvents was an outside impetus to begin using low VOC solvents to clean presses. By plaintiff's own admission, the existing spray bar/dry roll systems worked poorly with low VOC solvents. Therefore, a problem needed to be solved. The mechanics of printing press design led to a finite number of solutions. The pieces for the ultimately embraced solution were all present in the prior art, and it was only a matter of time before they were put together in the manner described in the asserted claims of the '976 patent. We find this to be true, particularly in light of KSR's instruction that "Common sense teaches ... that familiar items may have obvious uses beyond their primary purposes, and in many cases a person of ordinary skill will be able to fit the

teachings of multiple patents together like pieces of a puzzle." KSR, 127 S.Ct. at 1742. *See also*, Muniauction, Inc. v. Thomson Corp., ___ F.3d ___, 2008 WL 2717689, at *6-*10 (Fed. Cir. July 14, 2008) (holding obvious the application of web browser technology to original issuer auction of municipal bonds that allowed auctions to occur on the internet because adapting existing electronic processes to incorporate modern internet technology had become commonplace); Leapfrog Enterprises, Inc. v. Fisher-Price, Inc., 485 F.3d 1157, 1160-63 (Fed. Cir. 2007) (finding obvious application of modern electronics to prior art mechanical device that produced phonetic sounds for children because the application of modern electronics to older mechanical devices had become commonplace in recent years).

Plaintiff contends that secondary considerations, such as its commercial success after an initial period of skepticism, demonstrate that the asserted claims were not obvious. We cannot agree. The plaintiff has presented evidence of industry skepticism when its product was introduced and the product's current commercial success is not in dispute. But, even considering the fact that defendant did not enter the marketplace until after plaintiff launched its product, we cannot rule out the obviousness of the asserted claims. In light of the new regulations, there was a great need for a low VOC product that worked. *See* Muniauction, 2008 WL 2717689, at *9 (finding secondary considerations inadequate to overcome obviousness determination); Leapfrog, 485 F.3d at 1162 (same). This was not a longstanding need that was being filled, but rather a relatively new need caused by an external force. We find that the solution, and therefore the '976 patent, was obvious.

3. Indefiniteness

Defendant also contends that the claim terms, "reduced air content cleaning fabric" and "reducing air content of a strip of cleaning fabric," are indefinite, rendering the asserted

claims in the patent invalid. Although we need not address this argument because we have already determined the patent is invalid as obvious, for the sake of completeness we undertake the analysis.

The purpose of claims in a patent are to "distinctly claim[] the subject matter which the applicant regards as his invention." 35 U.S.C. § 112 ¶ 12. This requirement is met "when [the claims] clearly distinguish what is claimed from what went before in the art and clearly circumscribe what is foreclosed from future enterprise." Datamize, LLC v. Plumtree Software, Inc., 417 F.3d 1342, 1347 (Fed. Cir. 2005) (quoting United Carbon Co. v. Binney & Smith Co., 317 U.S. 228, 236 (1942)). But claims are not indefinite just because they present a difficult task of claim construction. Halliburton Energy Services, Inc. v. M-ILLC, 514 F.3d 1244, 1249 (Fed. Cir. 2008). "If the meaning of the claim is discernible, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree, [] the claim [may be] sufficiently clear to avoid invalidity on indefiniteness grounds." Id. "Only claims 'not amenable to construction' or 'insolubly ambiguous' are indefinite." Datamize, 417 F.3d at 1347.

Here we must determine whether the claim terms, together with the specification and prosecution history, would allow a person of ordinary skill in the art to discern the boundaries in the claims. See Halliburton, 514 F.3d at 1249; Ortho-McNeil Pharm. Corp. v. Caraco Pharm. Labs., Ltd., 476 F.3d 1321, 1326 (Fed. Cir. 2007). Defendant, relying predominantly on Halliburton, answers no for two reasons. First, the patent does not adequately distinguish the claim term from the prior art. Second, the patent does not provide a reference baseline for determining whether a particular fabric has had its air content reduced.

Defendant first contends that the prior art contains numerous examples of the practice

of winding fabric on a roll. Because the claim term, as expanded by the Federal Circuit, contains no mention of a specific method for winding the fabric on a roll, defendant argues it is indistinguishable from the prior art and therefore indefinite. This argument is a non-starter. In <u>Halliburton</u>, the Federal Circuit specifically noted that a claim could be definite while reading on the prior art. The Court then went on to discuss the very situation we have before us. "For example, a claim that recites a specific numeric range for a physical property may be definite even though prior art products fell within that range. In such a case, a person of ordinary skill in the art would know the boundaries of the claim, and the focus would properly be on other validity challenges (e.g. anticipation)." <u>Halliburton</u>, 514 F.3d at 1252. The claim at issue here provides a precise numerical limitation (between 1 and 50%) for a physical property (the reduction of the volume of the fabric). Any challenge relating to the prior art is more properly raised as an anticipation or obviousness challenge.

Defendant's next argument is more persuasive. Defendant contends that because the claims do not provide a reference baseline, it is not possible for a person of ordinary skill in the art to determine by how much, if any, the air content has been reduced. For example, at manufacture, non-woven fabric is often wound on large "mother rolls" for storage. When ready to be delivered, the fabric is cut to specific dimensions and transferred (via winding) to a smaller roll. A percentage calculation, with the baseline air content measured immediately after the fabric is manufactured, will result in a much larger percentage reduction than a percentage calculation with the baseline air content measured after the fabric is wound on the mother roll (but before it is wound on the smaller target roll), because some tension has already been exerted. The first calculation may result in a product that infringes on the patent, while the second may not. Which is correct? From the claims, specification and

preferred embodiment we cannot say.

Plaintiff leaves this argument unanswered, except to assert that both parties' experts had no trouble devising testing to determine if a product infringed. However, that these three experts agree that testing is possible is not dispositive to the issue of indefiniteness. The devil is in the details, and the details here expose the claim as indefinite. There is no evidence before us that the experts agree as to the reference baseline. Without such agreement, each expert could perform a test under the same circumstance and arrive at a different percentage value. Defendant's experts may have no trouble determining that a product does not infringe, while plaintiff's expert may have no trouble determining that the same product infringes. Without a reference standard, we have no choice but to determine that independent claims 1 and 14, along with their respective dependent claims, are "insolubly ambiguous" and therefore invalid.[6]

## CONCLUSION

For the reasons stated above, we find that the '976 patent is invalid as obvious and indefinite. Accordingly, we grant defendant's motion for summary judgment.

JAMES B. MORAN
Senior Judge, U. S. District Court

August 27, 2008.

---

[6] For the same reason, the patent fails the enablement requirement ("The enablement requirement [of 35 U.S.C. § 112 ¶ 1] is satisfied when one skilled in the art, after reading the specification, could practice the claimed invention without undue experimentation." Sitrick v. Dreamworks, LLC, 516 F.3d 993, 999 (Fed. Cir. 2008)), and the written description requirement (35 U.S.C. § 112 ¶ 1 requires the patent specification "must clearly allow a person of ordinary skill in the art to recognize that [the inventor] invented what is claimed." Gentry Gallery, Inc. v. Berkline Corp., 134 F.3d 1473, 1479 (Fed. Cir. 1998)).